[No. B182477. Second Dist., Div. Seven. Sept. 27, 2006.]

HERMELINDA AGUIAR et al., Plaintiffs and Appellants, v.
CINTAS CORPORATION NO. 2 et al., Defendants and Respondents.

**COUNSEL**

Altshuler, Berzon, Nussbaum, Rubin & Demain, Fred H. Altshuler, Michael Rubin and Eileen B. Goldsmith for Plaintiffs and Appellants.

Rockard J. Delgadillo, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Gerald M. Sato, Deputy City Attorney, as Amicus Curiae on behalf of Plaintiffs and Appellants.

Squire, Sanders & Dempsey, Mark C. Dosker, Diane L. Gibson, Michael W. Kelly, Casey J. T. McCoy and Yeon Gyo Shuh for Defendants and Respondents.

**OPINION**

**PERLUSS, P. J.**—Hermelinda Aguiar, Alicia Maria Aldrete, Aurora Banuelos and Maria Alicia Gonzalez (collectively plaintiffs) filed this lawsuit as a putative class action against their employer, Cintas Corporation No. 2 and Cintas Corporation No. 3 (Cintas), for violation of the Los Angeles Living Wage Ordinance (LWO) (L.A. Admin. Code, § 10.37 et seq.) and

related claims. The trial court denied their motion for class certification, finding the proposed class was not ascertainable and lacked a well-defined community of interest and class treatment was not the superior means to resolve the litigation. Because the complexities of the case on which the trial court relied to find class certification inappropriate can be addressed by the use of subclasses and, with those issues resolved, the requirements for class treatment are satisfied, we reverse the order denying certification and remand the matter with directions for the trial court to certify two subclasses of Cintas employees and to conduct further proceedings not inconsistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Los Angeles Living Wage Ordinance and Implementing Regulations*

Effective May 5, 1997, the City of Los Angeles (City) adopted the LWO prescribing a minimum level of compensation be paid to employees of private firms who work on service contracts benefiting the City. According to the legislative findings, "[e]xperience indicates that procurement by contract of services has all too often resulted in the payment by service contractors to their employees of wages at or slightly above the minimum required by federal and state minimum wage laws. Such minimal compensation tends to inhibit the quantity and quality of services rendered by such employees to the City and to the public. Underpaying employees in this way fosters high turnover, absenteeism, and lackluster performance. Conversely, adequate compensation promotes amelioration of these undesirable conditions. Through this article the City intends to require service contractors to provide a minimum level of compensation that will improve the level of services rendered to and for the City. [¶] The inadequate compensation typically paid today also fails to provide service employees with resources sufficient to afford life in Los Angeles. It is unacceptable that contracting decisions involving the expenditure of City funds should foster conditions placing a burden on limited social services. The City, as a principal provider of social support services, has an interest in promoting an employment environment that protects such limited resources. In requiring the payment of a higher minimum level of compensation, this article benefits that interest."

To achieve those goals, all nonexempt employers who are recipients of a service contract[1] with the City must pay covered employees a specified

---

[1] The LWO defines "service contract" as "a contract let to a contractor by the City primarily for the furnishing of services to or for the City (as opposed to the purchase of goods or other property or the leasing or renting of property) and that involves an expenditure in excess of twenty-five thousand dollars ($25,000) and a contract term of at least three (3) months; but

minimum hourly rate: The initial 1997 rates were $7.25 per hour with health benefits (defined as the payment of at least $1.25 per hour toward the provision of health care benefits for employees and their dependents) or otherwise $8.50 per hour; and the ordinance provides for annual rate increases. (L.A. Admin. Code, §§ 10.37.2, subd. (a), 10.37.3.) Employers must also provide employees with 12 compensated days off per year for sick leave, vacation or personal necessity at the employee's request and, if that time is exhausted, an additional 10 days per year of uncompensated time for sick leave for the illness of the employee or a member of his or her immediate family. (*Id.*, § 10.37.2, subd. (b).) In addition, employers are required to notify employees who earn less than $12 per hour of their potential right to the federal earned income credit and make available related forms. (*Id.*, § 10.37.4.) The LWO defines "employee" as "any person—who is not a managerial, supervisory, or confidential employee and who is not required to possess an occupational license—who is employed [¶] (1) as a service employee of a contractor or subcontractor on or under the authority of one or more service contracts and who expends any of his or her time thereon, including but not limited to: hotel employees, restaurant, food service or banquet employees; janitorial employees; security guards; parking attendants; nonprofessional health care employees; gardeners; waste management employees; and clerical employees . . . ." (*Id.*, § 10.37.1, subd. (f).)

The LWO prohibits an employer from retaliating against an employee "for complaining to the City with regard to the employer's compliance or anticipated compliance with [the LWO], for opposing any practice proscribed by [the LWO], for participating in proceedings related to this article, for seeking to enforce his or her rights under [the LWO] by any lawful means, or for otherwise asserting rights under [the LWO]." (L.A. Admin. Code, § 10.37.5.) It provides employees with a private right of action against a violating employer and specifies the available damages: "(1) For failure to pay wages required by [the LWO]—back pay for each day during which the violation continued. [¶] (2) For failure to pay medical benefits—the differential between the wage required by [the LWO] without benefits and such wage with benefits, less amounts paid, if any, toward medical benefits. [¶] (3) For retaliation—reinstatement, back pay, or other equitable relief the court may deem appropriate. [¶] (4) For willful violations, the amount of monies to be paid under (1)–(3) shall be trebled." (*Id.*, § 10.37.6, subd. (a).) The LWO requires a court to "award reasonable attorney's fees and costs to an

---

only where any of the following applies: [¶] (1) at least some of the services rendered are rendered by employees whose work site is on property owned by the City, [¶] (2) the services could feasibly be performed by City employees if the awarding authority had the requisite financial and staffing resources, or [¶] (3) the [designated administrative agency] has determined in writing that coverage would further the proprietary interests of the City." (L.A. Admin. Code, § 10.37.1, subd. (j).)

employee who prevails in any such enforcement action and to an employer who so prevails if the employee's suit was frivolous." (*Id.*, § 10.37.6, subd. (b).)

At its inception the LWO required the Los Angeles City Council by resolution to designate a department or office (termed the designated administrative agency) to promulgate rules for its implementation and to otherwise coordinate administration of its requirements. (L.A. Admin. Code, § 10.37.7.) As the recipient of that designation, the Department of Public Works, Bureau of Contract Administration, Office of Contract Compliance promulgated "Rules and Regulations Implementing the Living Wage Ordinance."

Under regulation No. 4 an employer covered by the LWO must submit within 10 days of execution of an agreement subject to the LWO forms listing all subcontractors and employees working on the agreement and notify each current employee, and each new employee at the time of hire, of his or her rights under the LWO. Regulation No. 5, entitled "the 20-hour rule," specifies when an employee is entitled to the benefits of the LWO: "For purposes of the LWO and unless otherwise exempt, an employee of a service contractor . . . will be covered by the LWO if he or she works at least 20 hours during the month (a) on a service contract . . . . [¶] If an employee has worked at least 20 hours on the subject agreement during the month, the employee must be paid the appropriate LWO wage rate for each hour worked on the subject agreement during that month. The employee must also accrue compensated and uncompensated time off during that month. [¶] If the employee does not work at least 20 hours on the subject agreement during the month, the employer will not be required to compensate the employee at the LWO rate for that month. The compensated and uncompensated time off requirements will also not apply for that month." (See also reg. No. 4 ["Employers are required to pay the living wage rate to employees working on the City agreement who meet the requirements of Regulation #5. If an employee meets the conditions stated in Regulation #5, the employer shall pay the employee the living wage rate for each hour the employee works on the City agreement."].)

### 2. *Cintas and Its DWP Contracts*

Cintas is a corporation that leases and launders garments (uniforms) and other goods for its customers. In 1999 and again in 2003 the City awarded Cintas a contract to lease and launder flame-retardant garments and other items for use by employees of the Los Angeles Department of Water and Power (DWP). Under each contract Cintas was required to pick up soiled uniforms and materials, such as dustrags, towels and blankets, used by DWP employees from numerous DWP locations, launder the items, make any

necessary repairs and return them to their respective DWP site. Items generally were picked up from DWP sites each business day and returned clean within a week of receipt. Cintas used its Whittier, Pico Rivera and Ontario facilities at various times to process the DWP items. Each contract required Cintas to comply with the LWO for all covered employees, including the salary, vacation and sick time and notification provisions. For each contract Cintas signed a declaration of compliance, certifying it would comply with the LWO and provide the City a list of all employees subject to the LWO, including the name, position, classification and rate of pay for each employee. The City terminated its contract with Cintas for cause on January 28, 2004.[2]

### 3. *The Lawsuit and Class Action Allegations*

On February 17, 2004, Gonzalez, a number of other individual plaintiffs and the international workers' union UNITE filed a lawsuit alleging Cintas had failed to properly compensate its employees under the LWO and Labor Code with respect to their work on the DWP contracts and, as a result, had committed unlawful business practices under Business and Professions Code section 17200 (section 17200). Specifically, they alleged Cintas paid hourly wages less than those required by the LWO, declined to provide some of them with at least 12 compensated days off per year and failed to notify employees of their possible right to the federal earned income credit. The complaint alleged four causes of action: (1) violation of the LWO; (2) violation of Labor Code section 204 (for failing to pay full wages when due); (3) violation of section 17200; and (4) breach of contract (as third party beneficiaries of the contracts between Cintas and the DWP). Gonzalez and the other individual plaintiffs, who all worked at Cintas's Whittier facility, alleged they were representing themselves individually, all others similarly situated (identified as workers who performed tasks, including, but not

---

[2] By letter dated January 21, 2004, the City informed Cintas it was terminating the contract for cause as of January 28, 2004, because Cintas had failed to implement a system for the electronic tracking of garments and to provide fire-resistant shirts and coveralls as required by the agreement. The City subsequently sued Cintas for breach of contract and breach of the implied covenant of good faith and fair dealing, alleging that, in addition to its failure to implement the tracking system and to provide certain uniforms, Cintas had breached the agreement by "fail[ing] to pay some or all of its employees in compliance with the [LWO] as it was obligated to do . . . ." With no admission of wrongdoing, Cintas and the City settled the matter, which released Cintas from any further liability against the City but provided the settlement would have no impact on the instant action. We take judicial notice of the complaint filed in *City of Los Angeles v. Cintas Corp. No. 2* (Super. Ct. L.A. County, 2005, No. BC324619) and of the Board of Water and Power Commissioners' regulation approving the settlement in that action. (Evid. Code, §§ 452, subds. (b) & (d), 459, subd. (a).) We decline to take judicial notice of the other documents submitted by plaintiffs in connection with their motion for class certification and on appeal as they are not necessary to our resolution of the case.

limited to, sorting, assembling, hanging, folding and resorting laundry, for at least 20 hours per month pursuant to the DWP contracts) and the general public.

On March 30, 2004, Gonzalez, four new named plaintiffs (Maria Raquel Ayon, Aldrete, Aguiar and Banuelos) and UNITE filed a first amended complaint, this time alleging six causes of action: (1) violation of the LWO; (2) violation of section 17200; (3) violation of Labor Code sections 201 and 202 (for failing to make timely payment of full wages to employees who have quit or been discharged); (4) violation of Labor Code section 227.3 (for failing to compensate employees who have quit or been discharged for accrued vacation time); (5) violation of Labor Code section 204 (allowing them to recover civil penalties under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.)); and (6) breach of contract.[3]

The first amended complaint added class action allegations: Plaintiffs proposed to represent themselves individually and "a class of all of [Cintas's] current and former employees [of its Whittier, Pico Rivera and Ontario facilities] who have worked at least 20 hours per month on [Cintas's] contracts to provide rental, uniform, and laundry services to the DWP . . . ." Plaintiffs alleged they met the requirements for class certification because (1) the members of the class are ascertainable but so numerous that joinder is impracticable; (2) the claims of the proposed class plaintiffs are typical of those of each putative class member in that each has worked at least 20 hours during a single month on the DWP contracts; (3) the case poses numerous common questions of law and fact as to all proposed class members; and (4) plaintiffs are adequate representatives. In addition, with respect to the propriety of class treatment, plaintiffs alleged "[c]lass certification is appropriate because [Cintas] [has] implemented a scheme which is generally applicable to the Plaintiff Class, making it appropriate to issue final injunctive relief and corresponding declaratory relief with respect to the class as a whole. Class certification is also appropriate because the common questions of law and fact predominate over any questions affecting only individual members of the class. Further, the prosecution of separate actions against [Cintas] by individual class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for [Cintas]. For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this complaint."

---

[3] The other individuals named in the original complaint were no longer part of the action. Ayon voluntarily dismissed her case on October 5, 2004; UNITE voluntarily dismissed its case on December 3, 2004.

### 4. *Plaintiffs' Motion for Class Certification and Second Amended Complaint*

On January 19, 2005, plaintiffs filed a motion for class certification, seeking an order certifying a class of more than 300 production and stockroom workers at Cintas's facilities in Whittier, Pico Rivera and Ontario during the period from May 1, 2000 (the effective date of Cintas's original contract with the DWP), to January 28, 2004 (the date the City terminated its contract with Cintas). Plaintiffs contended their proposed class was ascertainable and a well-defined community of interest existed among class members. In addition, plaintiffs argued class treatment was the superior means of resolving the litigation for both the class members and the court.

Shortly after filing their motion for class certification, on January 24, 2005, plaintiffs were granted leave to file a second amended complaint, realleging the six causes of action contained in the first amended complaint and adding a seventh cause of action for violation of Labor Code section 226 (failure to maintain required records); an eighth cause of action for violation of Labor Code section 223 (payment of less than a statutory or contractual wage scale); a ninth cause of action for violation of Labor Code sections 204 and 1194 (failure to pay wages when due); and a 10th cause of action for underpayment of overtime compensation under the Labor Code and Industrial Welfare Commission wage orders. Eliminating the limitation of their class to workers who had spent at least 20 hours per month performing services on the DWP contracts, plaintiffs in the second amended complaint proposed to represent themselves individually and "all of [Cintas's] current and former employees who have worked on [Cintas's] contracts with the DWP" at the Whittier, Pico Rivera and Ontario facilities from May 1, 2000, to January 28, 2004.

Cintas opposed class certification, arguing the named plaintiffs were not adequate class representatives and common issues of law and fact did not predominate over the individual determinations that would be required to determine who was a member of the putative class. Specifically, Cintas maintained that, to demonstrate applicability of the LWO, each named plaintiff and putative class member would be required to demonstrate he or she worked at least 20 hours per month on the DWP contracts.

### 5. *The Trial Court's Denial of Class Certification*

The trial court denied plaintiffs' motion for class certification. The court explained the proposed class was not ascertainable because plaintiffs had failed to specify available means to identify the individual class members. The court also determined the putative class members lacked a well-defined

community of interest because the testimony from the named plaintiffs regarding the amount of time they worked on DWP contracts was "incompatible and contradictory[,]" rendering the named plaintiffs not typical of the proposed class and inadequate representatives. Finally, the court concluded class adjudication was not the superior means of resolving the litigation because plaintiffs' evidence did not demonstrate substantial benefits would accrue to either the litigants or the court if the lawsuit were maintained as a class action.[4]

Plaintiffs filed a timely notice of appeal. (See *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27] [denial of certification motion to entire class is an appealable order].)

## CONTENTIONS

Plaintiffs contend the trial court abused its discretion by denying class certification on the grounds they had failed (1) to establish an ascertainable class and a well-defined community of interest and (2) to demonstrate class treatment was the superior means, for both the parties and the court, of resolving the litigation. Plaintiffs maintain the trial court implicitly assumed the validity of the 20-hour rule and then used it to determine class treatment was not the appropriate means to resolve the litigation. According to plaintiffs, the 20-hour rule is unenforceable because it directly conflicts with the LWO's definition of employee as one "who expends any of his or her time" on a City service contract.

## DISCUSSION

### 1. *Standard of Review*

A trial court's ruling on a motion for class certification is reviewed for abuse of discretion. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-On*).) " 'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [Accordingly,] a trial court ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]" [citation]. . . . "Any valid pertinent reason stated will be sufficient

---

[4] After the trial court denied plaintiffs' motion for class certification, Cintas's pending demurrer to plaintiffs' fifth cause of action in their second amended complaint for civil penalties under the Labor Code Private Attorneys General Act of 2004 and its motion for summary judgment of the entire action were taken off calendar; and the action in its entirety has been stayed pending resolution of this appeal.

to uphold the order." ' [Citations.]" (*Id.* at pp. 326–327; see also *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1106 [131 Cal.Rptr.2d 1, 63 P.3d 913].)

> ### 2. *None of the Grounds Relied on by the Trial Court Is a Valid Basis for Denying Plaintiffs' Class Certification Motion*
>
> #### a. *Requirements for certification of a class action*

■ Class actions are statutorily authorized "when the question is one of common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." (Code Civ. Proc., § 382.) "The certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' [Citation.]" (*Sav-On, supra,* 34 Cal.4th at p. 326.) "As the focus in a certification dispute is on what type of questions—common or individual—are likely to arise in the action, rather than on the merits of the case [citations], in determining whether there is substantial evidence to support a trial court's certification order, [the reviewing court] consider[s] whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment. [Citations.]" (*Id.* at p. 327.) " '[T]his state has a public policy which encourages use of the class action device.' [Citation.]" (*Id.* at p. 340.)

■ "The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citation.]" (*Sav-On, supra,* 34 Cal.4th at p. 326.) "The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (*Ibid.*) " '[T]his means "each member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." ' [Citation.]" (*Lockheed Martin Corp. v. Superior Court, supra,* 29 Cal.4th at p. 1108.)

■ "A class action also must be the superior means of resolving the litigation, for both the parties and the court. [Citation.] 'Generally, a class suit is appropriate "when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer." [Citations.]' [Citation.] '[R]elevant considerations include the probability that each class member will come forward

ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing.' [Citation.] '[B]ecause group action also has the potential to create injustice, trial courts are required to " 'carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts.' " [Citation.]' [Citations.]" (*Newell v. State Farm General Ins. Co.* (2004) 118 Cal.App.4th 1094, 1101 [13 Cal.Rptr.3d 343]; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) ¶ 14:16, pp. 14-11 to 14-12 (rev. #1, 2006) [benefits of class action evaluated by (1) interest of each putative class member in controlling his or her case personally; (2) potential difficulties in managing a class action; (3) nature and extent of already pending litigation by individual class members involving the same controversy; and (4) desirability of consolidating all claims in a single action before one court].)

### b. *The 20-hour rule is not a basis for denying class certification*

The initial pleadings in this case assumed the validity of the 20-hour rule by including only employees who had worked at least 20 hours per month on the DWP contracts. In the second amended complaint, however, plaintiffs expanded the proposed class to all current and former employees at Cintas's Whittier, Pico Rivera and Ontario facilities who worked on the DWP contracts during the contract period from May 1, 2000, to January 28, 2004. In the appellate briefs both parties discuss the validity of the 20-hour rule, with plaintiffs arguing the rule is unenforceable and thus no bar to class certification because it conflicts with a broader definition of "employee" in the LWO itself and Cintas maintaining plaintiffs waived their challenge to the rule and, in any event, the rule is enforceable and precludes class treatment of the action. The parties' focus on the validity of the 20-hour rule at the certification stage of the litigation is premature: Although the validity of the 20-hour rule will have to be addressed at some point in this litigation, it is not necessary to do so at the certification stage, nor does the rule itself defeat class certification.

The LWO defines "employee" as "any person . . . who is employed [¶] . . . as a service employee of a contractor . . . and who expends any of his or her time thereon . . . ." (L.A. Admin. Code, § 10.37.1, subd. (f).) The implementing regulations specify that an employee is covered by the LWO if he or she works at least 20 hours during the month on a service contract. (Regs. No. 4 & 5.) For all qualifying employees, the regulations require payment at the appropriate LWO wage rate for each hour worked on the City service contract and accrual of compensated and uncompensated time off during that month. (Regs. No. 4 & 5.)

■ Although the question of the validity of the 20-hour rule creates a distinction between putative class members, it is not, as Cintas claims, a distinction that renders class treatment inappropriate. Cintas is correct that, because the 20-hour rule may be enforceable, employees who worked at least 20 hours per month on DWP contracts might have interests antagonistic to those who did not. But that potential conflict cannot defeat class treatment because the putative class can be divided into two subclasses: one subclass consisting of Cintas employees at its Whittier, Pico Rivera and Ontario facilities who worked at least 20 hours per month on the DWP contracts in existence between May 1, 2000, and January 28, 2004, and a second subclass consisting of Cintas employees at its Whittier, Pico Rivera and Ontario facilities who worked on the DWP contracts in existence between May 1, 2000, and January 28, 2004, but for less than 20 hours per month. This use of subclasses is an appropriate device to facilitate class treatment. (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470–471 [174 Cal.Rptr. 515, 629 P.2d 23] [class action need not be dismissed when trial court can use subclasses to remove any antagonism among members of the putative class]; see also *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964] [efficiency of class action may be promoted by use of subclasses]; *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 926 [107 Cal.Rptr.2d 761] [recognizing trial court's ability to divide class members into subclasses to eliminate differences in damage claims].)

To the extent questions arise later in the litigation about how to determine which putative class members worked at least 20 hours per month on the DWP contracts, or whether their schedules varied from month to month, that burden falls on Cintas. It was Cintas's business decision to commingle DWP items with those of other customers and to allow all employees to work on the items at each substation (for example, sorting, hanging, folding) as they were processed through the plant.

■ Moreover, the LWO through its implementing regulations requires employers to provide the City a list of all employees subject to the LWO (reg. No. 4); and at the time Cintas was awarded the DWP contracts it certified it would do so, including the name, position, classification and rate of pay for each employee. Thus, Cintas was aware that, if the LWO was applicable to its contracts, it was responsible for keeping track of employee time. Accordingly, it is appropriate to shift the burden of proof on issues regarding employee time spent on DWP contracts to Cintas: " '[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a . . . difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to

keep the benefits of an employee's labors without paying due compensation . . . . In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.' [Citations.]" (*Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 727 [245 Cal.Rptr. 36]; see also *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 961–964 [35 Cal.Rptr.3d 243] [burden of proof in wage-and-hour case on defendant to prove employer provided proper employee rest breaks]; cf. *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 36 [130 Cal.Rptr.2d 860] ["the burden of proving a plaintiff has been paid contingent compensation in accord with the parties' agreement is properly placed on a defendant in exclusive control of essential financial records (thereby imposing on the defendant the risk of any incompleteness in such records)"].)

■ In sum, the validity of the 20-hour rule need not be resolved at this stage of the litigation and is not a bar to class certification because the putative class can be divided into subclasses of those employees who worked at least 20 hours per month on the DWP contracts and those who did not.

### c. *With the use of subclasses, class-certification requirements are satisfied*

The trial court concluded class certification was not appropriate in this case because class members were not ascertainable and lacked a well-defined community of interest and class treatment was not the superior method for both the litigants and the courts for resolving the litigation. Based on the evidence presented in support of and in opposition to certification, none of those reasons is a valid ground for denying class treatment.

### i. *Ascertainability*

■ As to the initial requirement of an ascertainable class, "[a]scertainability is required in order to give notice to putative class members as to whom the judgment in the action will be res judicata." (*Hicks v. Kaufman & Broad Home Corp., supra,* 89 Cal.App.4th at p. 914.) "Class members are 'ascertainable' where they may be readily identified without unreasonable expense or time by reference to official records. [Citation.]" (*Rose v. City of Hayward* (1981) 126 Cal.App.3d 926, 932 [179 Cal.Rptr. 287].)

■ The proposed class in plaintiffs' second amended complaint consists of "all of [Cintas's] current and former employees who have worked on [Cintas's] contracts with the DWP" at the Whittier, Pico Rivera and Ontario facilities from May 1, 2000, to January 28, 2004. The members of plaintiffs' proposed class are ascertainable from Cintas's payroll records, which identify each employee by name, job code, dates of employment and rate of pay. Those payroll records will identify all employees who performed functions relevant to the DWP contracts during the time period DWP items were processed at each of the Whittier, Pico Rivera and Ontario facilities. Because, according to Cintas's own evidence, DWP items were not segregated but rather processed through the plants along with goods from Cintas's other customers and Cintas did not assign specific employees to work on DWP items, it is reasonable to infer at this stage of the litigation that all employees in relevant positions worked to some extent on the DWP contracts. Cintas cannot defeat class treatment because it failed to keep track of the employees who worked on the DWP contracts, as it certified it would do, and commingled DWP items with those of other customers. If it is determined later in the litigation that certain employees did not work on DWP contracts, those employees can be eliminated from the class at that time. (*Sav-On, supra*, 34 Cal.4th at p. 333 [" 'a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery . . .' "]; *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 743 [9 Cal.Rptr.3d 544] [class of all employees in certain job categories ascertainable even though some employees may not have worked overtime and thus may not be entitled to any recovery].) Thus, contrary to the trial court's finding, plaintiffs have provided a means to identify class members sufficient to satisfy the purpose of the ascertainability requirement to provide notice of the lawsuit.

### ii. *Community of interest*

The three factors to be considered in evaluating the requirement of a well-defined community of interest also favor class treatment in this case. The case is replete with common questions of law and fact, a point not addressed by the trial court and not effectively disputed by Cintas. For example, plaintiffs' theory of the case requires them to prove the LWO was applicable to the DWP contracts and Cintas failed to compensate its employees according to the LWO's terms, both matters that can and should be determined on a class-wide basis. The validity of the 20-hour rule is also a question amenable to class treatment. Moreover, Cintas's defenses to the action, such as its attack on the LWO's constitutionality and its challenge to the LWO based on federal and state law preemption, are common issues well-suited for class resolution. In addition, factual issues regarding Cintas's plant operations and processing of DWP items and the volume of goods laundered and repaired under the contracts can be determined and applied on

a class-wide basis. Finally, if the case reaches the damages phase, certain damage issues can be determined in a manner common to all class members based on payroll records and the percentage of Cintas's business the DWP contracts occupied during the contract period.

As to the need for class representatives who have claims typical of the class and who can adequately represent the class, the trial court found plaintiffs were not typical of the proposed class and inadequate representatives based on their "incompatible and contradictory" deposition testimony.[5] In making this finding, the trial court presumably accepted Cintas's argument that, if plaintiffs spent as much time during their average workday on DWP items as they testified to in deposition, their interests would be antagonistic to those of the other putative class members because the volume of DWP work Cintas maintained it processed at its facilities on a weekly basis would not have required the work of any other employees.

With the use of subclasses, however, the interests of employees who worked less than 20 hours per month on the DWP contracts are protected; and the interests of plaintiffs, who may have worked more than 20 hours per month on DWP items, are not antagonistic to those of the other putative class members. To the extent plaintiffs' testimony regarding the hours they worked on DWP contracts suggests they spent at least 20 hours per month on DWP goods, they can adequately represent a class of similarly situated employees. Other putative class members can be represented adequately by a named plaintiff who did not work 20 hours per month on the DWP contracts; and the second amended complaint may be amended once again on remand to add another named plaintiff should it be determined that the subclass of employees who did not work 20 hours per month on the DWP contracts needs an additional, adequate representative. (*La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113] ["If . . . the court concludes that the named plaintiffs can no longer suitably represent the class, it should at least afford plaintiffs the opportunity to amend their complaint, to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative"].)

In any event, Cintas's estimates regarding the volume of DWP work turned in on a weekly basis and the quantity of goods processed per hour (for example, the average number of shirts hung per hour) are not specific enough in terms of both facility and time period to discredit plaintiffs' rough guesses of the amount of time they devoted to DWP items. Indeed, the evidence showed DWP garments and other goods were commingled with items from

---

[5] Although the trial court's order denying class certification mentions plaintiffs' declarations, we assume the court meant to refer to plaintiffs' deposition testimony, which addresses the average number of hours they spent per day on DWP items.

all other customers and not necessarily identifiable by insignia. Thus, plaintiffs' deposition testimony, although perhaps an issue to be addressed at the merits stage of the litigation, is not a valid basis for denying certification. (*Lebrilla v. Farmers Group, Inc.* (2004) 119 Cal.App.4th 1070, 1084 [16 Cal.Rptr.3d 25] ["it remains to be seen whether the trier of fact will be persuaded by the plaintiffs' common proof and experts' testimony as to the quality of [certain automobile parts]. However, we are certain that, at this time, it is not our role, nor the trial court's job, to involve ourselves with the merits of the underlying action or which parties' experts are most qualified"].)[6]

### iii. *Superiority*

██ Finally, class treatment in this case is plainly the superior means for resolving the litigation for both the parties and the court. "[W]age and hour disputes (and others in the same general class) routinely proceed as class actions." (*Prince v. CLS Transportation, Inc.* (2004) 118 Cal.App.4th 1320, 1328 [13 Cal.Rptr.3d 725].) Plaintiffs' evidence suggests the putative class consists of more than 300 employees, a group sufficiently numerous to justify class treatment; and the claims of each of the employees are of insufficient size to warrant individual action. If class treatment were denied and employees able to bring their own individual cases, repetitious litigation regarding the LWO and its applicability to the DWP contracts would ensue, burdening the courts and creating the possibility of conflicting results. (*Sav-On, supra*, 34 Cal.4th at p. 340 ["Absent class treatment, each individual plaintiff would present in separate, duplicative proceedings the same or essentially the same arguments and evidence, including expert testimony. The result would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants"].) Class treatment in this case, therefore, will benefit both the litigants and the courts: " ' "By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation." ' [Citation.]" (*Ibid.*) In sum, the trial court's denial of class certification in this case constitutes an abuse of discretion.

---

[6] Cintas's claim that plaintiffs, who work at either the Whittier or Pico Rivera facilities, cannot adequately represent employees from the Ontario facility lacks merit. According to the evidence, although the Ontario facility is more automated than the Whittier and Pico Rivera facilities, plant operations are quite similar at all three facilities. Moreover, if it is subsequently determined that the Ontario employees are not being adequately represented by plaintiffs who work at another facility, a subclass of Ontario employees can be created at that time. (*Richmond v. Dart Industries, Inc., supra*, 29 Cal.3d at pp. 470–471; *Hicks v. Kaufman & Broad Home Corp., supra*, 89 Cal.App.4th at p. 926.)

## DISPOSITION

The order denying class certification is reversed. On remand the trial court is directed to certify two subclasses, one consisting of Cintas employees at its Whittier, Pico Rivera and Ontario facilities who worked at least 20 hours per month on the DWP contracts in existence between May 1, 2000, and January 28, 2004, and one consisting of Cintas employees at its Whittier, Pico Rivera and Ontario facilities who worked on the DWP contracts in existence between May 1, 2000, and January 28, 2004, for less than 20 hours per month, and to conduct further proceedings not inconsistent with this opinion. Plaintiffs are to recover their costs on appeal.

Johnson, J., and Woods, J., concurred.

A petition for a rehearing was denied October 26, 2006, and respondents' petition for review by the Supreme Court was denied January 24, 2007, S148595. Moreno, J., did not participate therein.