Filed 6/26/14  Booher v. The Poma Companies CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| JACK L. BOOHER, JR., et al., | |
| Plaintiffs and Appellants, | E056510 |
| v. | (Super.Ct.No. CIVDS1008438) |
| THE POMA COMPANIES, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Brian S. McCarville, Judge.  Reversed with directions.

Grahamhollis, Graham S.P. Hollis and Marta Manus for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Charles Barker and Won B. Kim for Defendant and Respondent.

I

INTRODUCTION

This appeal concerns the interplay of California labor law and federal

1

transportation regulations. Defendant Poma employs truck drivers to transport hazardous and nonhazardous materials. Plaintiffs Jack L. Booher, Jr., and Nelson Ramirez are two former Poma employees who claim that, because of federal regulation, they could not exercise their state statutory right to take unpaid off-duty meal and rest breaks and Poma did not pay them for on-duty meal and rest breaks between 2006 and October 2009. Plaintiffs seek to be certified as representatives of a class of 59 hazardous materials (hazmat) drivers.

In their second amended complaint (SAC), plaintiffs allege that Poma engaged in systematic wage and hour abuse involving meal periods, rest periods, minimum wages, overtime, and wage statements and records. Plaintiffs appeal from the trial court's order denying their motion for class certification. (Code Civ. Proc., § 382.)

The trial court found that a common question exists about whether Department of Transportation (DOT) regulations prevented Poma's drivers from taking off-duty meal or rest breaks. But the trial court concluded that individual questions about liability and damages would predominate and class adjudication would not be the superior method to resolve these issues. We agree there is a common question about how federal regulation affected the ability of Poma drivers to take off-duty meal and rest breaks. We also hold that issues about liability and damages do not make the drivers' claims unsuitable for class adjudication. We reverse and order the trial court to grant the motion for class certification.

II

FACTUAL AND PROCEDURAL BACKGROUND[1]

*A. The Second Amended Complaint*

The SAC includes class action and PAGA[2] allegations. The enumerated causes of action of the SAC are the first, second, ninth, and tenth causes of action for failure to provide mandated meal and rest periods; the third and eleventh causes of action for failure to pay minimum wages; the fourth and twelfth causes of action for failure to pay wages after discharge; the fifth, sixth, thirteenth, and fourteenth causes of action for failure to provide accurate wage statements and to maintain records; and the eighth cause of action for violations of Business and Professions Code section 17200 et seq.[3]

The SAC alleges that plaintiffs are suing on behalf of Poma employees working as hazmat truck drivers. A hazmat truck driver is a driver with a commercial driver's license who is authorized to transport hazardous materials. Poma's business, located in Bloomington, involves the distribution and delivery of lubricants and fuel (gasoline and

---

[1] Plaintiffs have not prepared a discrete statement of material facts and evidence with supporting citations as required by California Rules of Court, rule 8.204. The scattered record references are not sufficient. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Ajaxo Inc. v. E*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 50.) For that reason, we conduct our review with assistance from Poma's more comprehensive summary of the record.

[2] Private Attorneys General Act of 2004 (Labor Code, § 2698 et seq.)

[3] The seventh cause of action for Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 201 et seq.) violations was dismissed.

diesel) and providing fueling services throughout California. Poma's business is subject to the DOT Federal Motor Carrier Safety Regulations. (49 C.F.R. §§ 390-397.) Plaintiffs worked for Poma between 2006 and 2009. The SAC further alleges that Poma violated California laws regarding meal periods, rest breaks, and compensation. (Industrial Welfare Commission (IWC) Wage Order 9-2001 subd. 11; Lab. Code, § 226.7.)

In particular, Poma did not allow its drivers to receive paid on-duty meal and rest breaks. Federal regulation set forth in 49 Code of Federal Regulations section 397.5(c), provides that a hazmat driver must attend his vehicle when it is on a public street or highway. To attend the vehicle, the driver must be awake, in the vehicle, and not in a sleeper berth—or within 100 feet of the vehicle with an unobstructed view. Plaintiffs allege that, because of this federal regulation, Poma's hazmat drivers could not leave their vehicles unattended. They were not allowed to take off-duty meal or rest breaks and they were not paid for on-duty breaks. Poma also failed to allow a second paid on-duty meal break for drivers working a shift longer than 10 hours.

Poma did not obtain written consent from its drivers regarding on-duty meal periods until October 2009 when Poma began requiring its hazmat drivers to sign a written agreement. Poma paid its drivers only one month of retroactive pay for October 2009 for on-duty meal periods. The SAC also alleges that Poma miscalculated overtime rates by failing to incorporate nondiscretionary bonuses paid as part of an incentive program. Additionally, Poma did not provide accurate itemized wage statements.

4

*B. Class Certification*

*1. Plaintiff's Motion*

In plaintiffs' motion for class certification, they argued that the class certification requirements had been met for the 59 current and former employees because Poma had unlawfully "implemented and enforced a company-wide meal and rest break policy applied uniformly to all hazmat drivers." The class members performed identical jobs and were treated the same way by Poma. Before October 2009, Poma did not pay the hazmat drivers for on-duty meal and rest breaks which were necessary when federal regulation required them to stay with their vehicle. Plaintiffs assert that "The one decisive issue here is whether Poma's hazmat drivers have been wrongfully deprived of the ability to take duty-free meal and rest periods. This issue will not be decided on the basis of facts peculiar to each class member, but rather on the basis of a single set of facts applicable to all class members."

In support of their motion, plaintiffs repeatedly asserted that their meal, rest break, and derivative claims are all most suitable for class determination. Plaintiffs submitted 17 declarations. All the declarants stated "they were required to remain with their fuel trucks at all times while away from the Poma yard, even while eating lunch . . . any meal and rest breaks taken away from the Poma yard were always taken as on-duty." Poma automatically deducted 30 minutes from each shift worked until, in October 2009, Poma required drivers to sign a written on-duty meal period agreement (ODMPA).

A copy of the ODMPA does not appear in the record. However, the written policy for meal time and breaks requires employees to take a "30-minute unpaid duty-free meal period" which may be waived if the employee works only six hours. An employee who works more than 10 hours must take a second meal period unless it is waived. Waivers require prior authorization. On-duty meal periods are only allowed when a supervisor directs the employee to take an on-duty meal period due to the nature of the employee's duties and the employee agrees in writing.

Larry E. Miller, an expert hazmat truck driver, testified that Poma's hazmat drivers could not leave their vehicles unattended at loading racks or terminals while taking a break. James R. Lackritz, Ph.D., an expert witness on statistics, submitted his declaration stating that statistical sampling could be used to calculate damages without needing to perform an individualized inquiry.

*2. Poma's Opposition*

Poma argued in opposition that there was not a uniform class because three drivers stated they were able to take duty-free meal periods and rest breaks at restaurants, truck stops, and the Poma yard. Because of this difference, Poma argued it would be necessary to question every driver about every shift. Poma also contended that the federal regulations about attending to a vehicle only apply to the transportation of hazmat materials like gasoline and diesel, not the lubricants and other substances transported by its drivers. Furthermore, plaintiffs' proposed sampling to establish damages would violate Poma's due process rights.

According to Poma, it employs truck drivers to transport various petroleum products, including gasoline, diesel, and lubricants. Its drivers alternate between driving trucks with fuel and trucks with lubricants; they are not exclusively assigned to transport fuel or lubricants. Poma's customers include retail customers—gasoline stations, construction sites, bus or truck fleets, and industrial companies.

When drivers report for work, Poma's dispatcher assigns their daily routes and delivery orders. A fuel driver typically loads his tanker with gasoline at a "rack" or refinery and then delivers it to a gasoline service station, an industrial location, or a construction site. Drivers determine the route to deliver the product and return to the rack, refinery, or the Poma yard in Bloomington. On a typical day, a driver hauls several loads to different customers.

Hazmat drivers must comply with federal regulations governing the hours of service for drivers of such materials. 49 Code of Federal Regulations section 397.5 requires a driver to attend to his vehicle if the vehicle contains hazardous materials and is located on a public street or highway or its shoulder. The condition to "attend" is met if the driver is in the vehicle or within 100 feet of the vehicle and has the vehicle in his field of view. Poma interprets the requirement to attend the vehicle as applying when the vehicle is located on a public street, highway, or shoulder but not applying on private property or when drivers are hauling lubricants or other nonhazardous materials.

Under the original terms of Poma's written meal and rest break policy, drivers who worked five or more hours in a day were required to take a duty-free, 30-minute

7

unpaid meal break. In addition, drivers who worked over 10 hours in a day were required to take a second duty-free, 30-minute unpaid meal break, unless waived. Drivers are also entitled to a paid, 10-minute rest break for every four hours that they work. In October 2009, Poma instituted the ODMPA, which provided that—if the nature of the work for a particular day prevented the driver from being relieved of all duties during the meal break—he would be paid for the on-duty meal break, subject to prior authorization.

Poma contended the evidence demonstrated conflicting experiences among the drivers regarding the policies and practices for taking duty-free meal and rest breaks. Poma submitted the declarations of three drivers and other evidence that, notwithstanding federal regulations, its drivers are allowed to take duty-free breaks at various private locations, including truck stops, parking lots, malls, restaurants, racks, customer sites, and the Poma yard.

One driver, Robert Buetjen, stated that he took his off-duty breaks in or beside his truck. Another driver, Stephen Ford, stated he took his breaks at "a gas station, mall, truck stop, the Poma yard, or customer facility." Ford also stated: "Sometimes I stopped at an Arco or a gas station, Del Taco, Wal-mart, Home Depot, or any other place I could park my truck. . . . I saw a lot of drivers taking breaks at the rack because it could take twenty minutes to an hour to fill a truck." A third driver, Anthony Machado, stated, "I always found a place to park my truck and get my duty free meal period in the first five hours. The location where I took my meal period depended on the route I was driving.

For example, in Big Bear there were four or five places where I could park my truck, including a McDonalds."

*3. Plaintiffs' Reply*

Plaintiffs responded that the common legal issue is whether hazmat drivers are required to attend to "their fuel trucks during meal and rest breaks while away from the Poma facility." Plaintiffs argued that Poma's three drivers did not actually state that they took breaks while not attending their vehicles. Their declarations showed they were in their vehicles or in close vicinity of their vehicles. Furthermore, plaintiffs dispute that statistical sampling to determine damages violates due process.

*4. The Hearing and the Trial Court's Ruling*

The court overruled most of Poma's objections to portions of Miller's declaration but sustained the objections to his statements that a driver could not leave a vehicle unattended in a loading line and that a driver was not relieved from following DOT regulations.

The court denied the motion in a written ruling: "At bench, there is no clear feeling by the court that common questions predominate versus individual questions. Plaintiffs['] counsel are correct in that a common question does exist as to whether or not the Department of Transportation regulations prevent an off-duty meal or rest break. However, once past that question, the court determines that the remaining questions involve evidence that is more individualized. In addition to the requirements of Code of Civil Procedure [section] 386, appellate decisions have set forth that a 'class action must

9

also be the superior means of resolving the litigation for both parties and the courts'

*Aguiar vs. Cintas Corporation No. 2* (2006) 144 Cal.App.4th 121. The court has

struggled with the question in that class adjudication in part may be a superior method to

resolve the matters because the individual class members may lack resources to conduct

individualized litigation. However, from a review of the papers filed and the arguments

of counsel, the court finds that individual questions pre-dominate and if the litigation

continued through trial, all 59 class members would have to appear and testify, not only

to establish damages, but also . . . defendant's liability if any. This determination by the

court defeats a finding that class adjudication is the superior method of resolving the

disputes herein."

III

CLASS CERTIFICATION PRINCIPLES

Both parties rely heavily on the California Supreme Court case, *Brinker*

*Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, which was decided on April

12, 2012, the same day the trial court filed its ruling in this case.[4]

---

[4] The trial court did not have the benefit of *Brinker* or numerous appellate decisions which have since reversed various trial court rulings denying class certification motions. (*Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220; *Bluford v. Safeway Inc.* (2013) 216 Cal.App.4th 864; *Benton v. Telecom Network Specialists, Inc.* (2013) 220 Cal.App.4th 701; and *Jones v. Farmers Insurance Exchange* (2013) 221 Cal.App.4th 986.)

*Brinker* addressed the issue of class certification for claims about meals and rest breaks for about 60,000 restaurant employees. (*Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at p. 1019, fn. 14.) The *Brinker* court reversed part of the Court of Appeal's decision denying certification, approved certification of a rest break subclass, and remanded for the trial court to consider certification of a meal break subclass.

*Brinker* announced the principles of class certification: "Drawing on the language of Code of Civil Procedure section 382 and federal precedent, we have articulated clear requirements for the certification of a class. The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."' [Citations.]

"Here, only a single element of class suitability, and a single aspect of the trial court's certification decision, is in dispute: whether individual questions or questions of common or general interest predominate. The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' (*Collins v. Rocha* (1972) 7 Cal.3d 232, 238; accord, *Sav-On Drug Stores, Inc.*

*v. Superior Court* (2004) 34 Cal.4th 319, 326.) The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' (*Sav-On,* at p. 327.) A court must examine the allegations of the complaint and supporting declarations (*ibid*.) and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible.[] 'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' [Citations.]

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' [Citations.] Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. (*Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at pp. 328-329.) We must '[p]resum [e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' (*Id*. at p. 329.)" (*Brinker*

*Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at pp. 1021-1022; *Duran v. U.S. Bank National Assoc.* (2014) 59 Cal.4th ___, 2014 WL 2219042, p. *13.)

IV

CLASS CERTIFICATION

The trial court found that a common question exists involving DOT regulation but that individualized questions about liability and damages would predominate, making class certification unsuitable. We review the trial court's findings for substantial evidence. To some extent, we must consider the merits of the substantive legal disputes. (*Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at pp. 1022 and 1026.)

*A. Common Question*

As in *Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at page 1034, a preliminary legal issue in this case is "the nature of an employer's duty to provide employees with meal periods" and rest breaks. Plaintiffs contend that Poma's hazmat drivers were prevented from taking unpaid off-duty meal and rest breaks because of DOT regulations and they were not paid for compulsory on-duty meal breaks. Furthermore, plaintiffs argue the merit of their theory of recovery is irrelevant in determining class certification. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 439-440; *Faulkinbury v. Boyd Associates, Inc., supra,* 216 Cal.App.4th at p. 234.)

Poma counters that plaintiffs misinterpret 49 Code of Federal Regulations section 397.5, which applies to drivers carrying explosive materials, not to drivers carrying other kinds of hazardous materials like gasoline or diesel.[5]  Furthermore, Poma contends 49 Code of Federal Regulations section 397.5 only applies when a vehicle is on a public street or highway—not when a vehicle is parked on a private road or private property, including a parking lot, a refinery, or a yard.  Therefore, when hauling hazardous materials like gasoline or diesel, a driver must attend to his vehicle only on a public road—and not when taking a break in a McDonalds parking lot.  Finally, a driver hauling lubricants is not required to attend to his vehicle while taking his break.

The United States Supreme Court has explained that, when considering the issue of commonality in the context of class certification, "[w]hat matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  (*Wal-Mart Stores, Inc. v. Dukes* (2011) 131 S.Ct. 2541, 2550-2551.)  The common question "must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  (*Wal-Mart*, at p. 2551.)

---

[5]  Poma asserts that explosives are defined as grenades, mines, nitroglycerine, rockets, warheads, projectile, signal smoke, and tracers.  Gasoline is a hazardous material but not an explosive.

14

Poma believes that the federal regulation does not require drivers to attend to their vehicles when they are located on private property. Poma submitted evidence demonstrating that some drivers took their meal and rest breaks at many locations other than the Poma yard, notwithstanding any regulation that purportedly curtailed where they could take their duty-free breaks. Poma reasons the issue of class-wide liability cannot be resolved as a common question because Poma and some of its drivers believed the drivers could take duty-free meal and rest breaks while not attending their vehicles. Therefore, Poma maintains the trial court properly concluded that common questions do not predominate.

As already mentioned, the trial court found there was a common question about whether federal regulation prevents an off-duty meal or rest break. We agree. Poma's arguments about how to interpret federal regulation and how it should be applied do not negate the existence of a common question in this case: "Plaintiff's theory of recovery does not concern the drivers' subjective reasons for taking or not taking a rest period." (*Bluford v. Safeway Inc., supra,* 216 Cal.App.4th at p. 873.) The federal regulation either operates to support plaintiffs' claims or to rebut them. But the determination of this question will resolve an issue that is central to the validity of plaintiffs' claims "in one stroke." (*Wal-Mart Stores, Inc. v. Dukes, supra*, 131 S.Ct, at pp. 2550-2551.) We hold the trial court correctly found there was a common question which we conclude promotes class certification as the proper vehicle for plaintiffs' claims.

15

*B. Individualized Questions About Liability and Damages*

The trial court did not base its denial of class certification on the absence of a common question. Instead, it found there were individualized questions about liability and damages. The trial court erred in focusing on the potential conflicting facts or law on an individual basis. (*Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1299, citing *Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524, 1531.) Our discussion of these issues tends to overlap with the issue of whether class adjudication is the superior method.

First, we turn to Justice Werdegar's concurring opinion in *Brinker*, for which she was also the majority author. About class certification for meal period claims, she said: "While individual issues arising from an affirmative defense can in some cases support denial of certification, they pose no per se bar. [Citations.] Instead, whether in a given case affirmative defenses should lead a court to approve or reject certification will hinge on the manageability of any individual issues. (See *Sav-On*[ *Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th] at p. 334.) [¶] . . . We have long settled that individual damages questions will rarely if ever stand as a bar to certification. (*Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at p. 334; *Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256, 266.) '"In almost every class action, factual determinations [of damages] . . . to individual class members must be made. [Citations.] Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution. Indeed, to decertify a class on the issue of damages

16

or restitution may well be effectively to sound the death-knell of the class action device."' (*B.W.I. Custom Kitchen v. Owens–Illinois, Inc.* (1987) 191 Cal.App.3d 1341, 1354.)

"Instead, we have encouraged the use of a variety of methods to enable individual claims that might otherwise go unpursued to be vindicated, and to avoid windfalls to defendants that harm many in small amounts rather than a few in large amounts. (See *Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at pp. 339-340; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 714-715.) Representative testimony, surveys, and statistical analysis all are available as tools to render manageable determinations of the extent of liability. (See, e.g., *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 749-755 [9 Cal.Rptr.3d 544] [upholding as consistent with due process the use of surveys and statistical analysis to measure a defendant's aggregate liability under the IWC's wage orders]; *Dilts v. Penske Logistics, LLC* (S.D.Cal. 2010) 267 F.R.D. 625, 638 [certifying a meal break subclass because liability could be established through employer records and representative testimony, and class damages could be established through statistical sampling and selective direct evidence]; see generally *Sav-On*, at p. 333 & fn. 6.) '[S]tatistical inference offers a means of vindicating the policy underlying the Industrial Welfare Commission's wage orders without clogging the courts or deterring small claimants with the cost of litigation.' (*Bell*, at p. 751.) [¶] . . . Instead, it remains for the trial court to decide . . . whether . . . methods exist sufficient to render class treatment manageable." (*Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th

17

at pp. 1053-1055; *Duran v. U.S. Bank National Assn., supra,* 59 Cal.4th at p. ___, 2014 WL 2219042 at pp. *14-*15.)

Here Poma opposed certification, arguing that the court would have to question each individual class member to determine whether a meal and rest break was taken each day because some declarants stated that they took meal and rest breaks and others stated that they did not and plaintiffs cannot use representative sampling to show when breaks were or were not taken.  However, if the DOT regulations prevent duty-free meal and rest breaks, then any meal and rest breaks will have been taken on-duty in spite of what the declarants believed.  Therefore, liability as to whether drivers were able to take duty-free meal and rest breaks can be determined on a class-wide basis,

The trial court agreed with plaintiffs as to the common legal question.  If plaintiffs' theory of recovery is correct, Poma's liability can be readily determined by facts common to all 59 of Poma's drivers.  Whether some class members took a break is not a bar to class certification.  (*Bluford v. Safeway Inc., supra,* 216 Cal.App.4th at pp. 868 and 873; *Benton v. Telecom Network Specialists, Inc., supra,* 220 Cal.App.4th at p. 726; *Jones v. Farmers Insurance Exchange, supra,* 221 Cal.App.4th at p. 996.)  If the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages. (*Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at p. 1021; *Benton,* at p. 726; *Jones,* at p. 996.)  While some calculation of individual damages might be required

eventually, that possibility does not foreclose taking common evidence on liability issues. (*Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at p. 332.)

Plaintiffs' rest break and second meal break claims are part of their overall claim for failure to provide mandated breaks. The second meal break claim may be proved by daily logs showing that drivers never took and never recorded a second meal break. Similarly, the rest break claim may be proved by showing that the drivers could not take duty-free rest breaks and still comply with federal regulations. Poma's company-wide rest break policy, which is part of the evidentiary record, supports plaintiffs' allegations that they were subject to a uniform rest break policy and did not receive duty-free rest breaks. (*Faulkinbury v. Boyd & Associates, Inc., supra,* 216 Cal.App.4th at p. 234; *Jones v. Farmers Insurance Exchange, supra,* 221 Cal.App.4th at p. 996.) Furthermore, the professed uniformity of Poma's policies and practices suggests that Poma has "treated the off-duty meal break issue on a classwide basis." (*Faulkinbury,* at p. 234.) For these reasons, common legal and factual issues predominate over any individual issue of liability with respect to the second meal break and rest break claims as well as plaintiffs' derivative claims.

C. *Superior Method of Adjudication*

The trial court also found that a class action was not the superior method of adjudication because drivers would have to testify individually about their damages. However, there was no evidence that hazmat drivers could leave their trucks unattended while taking meal and rest breaks. If plaintiffs are correct, Poma will be liable for

19

automatically deducting time for meal periods to all members of the class whether or not the drivers believed they could take duty-free meal breaks. Poma will also have a common defense for liability to all members of the class regardless of the individual beliefs or experiences of some members of the class. Thus, the predominant factual issues are susceptible to common proof.

Certification does not mandate that class members have uniform or identical claims. (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 338.) Only the issue of damages, not liability, would need to be addressed using representative sampling. California law allows the use of survey and statistical evidence to prove aggregate class-wide damages in wage and hour class actions even when each member of the class may at some point be required to make an individual showing as to his eligibility for recovery or as to the amount of his damages. (*Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at p. 1054; *Williams v. Superior Court* (2013) 221 Cal.App.4th 1353, 1365, fn. 6.)

The foregoing remains true even after the due process concerns expressed in *Wal-Mart Stores, Inc. v. Dukes, supra,* 131 S.Ct. 2541: "Damage calculations have little, if any, relevance at the certification stage before the trial court and parties have reached the merits of the class claims. At the certification stage, the concern is whether class members have raised a justiciable question applicable to all class members. . . . But differences in the amount of individual damages do not by themselves defeat class certification. [Citations.] '"As a general rule if the defendant's liability can be

20

determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.'" (*Brinker* at p. 1022.)" (*Williams v. Superior Court, supra,* 21 Cal.App.4th at p. 1365; *Duran v. U.S. Bank National Assn., supra,* 59 Cal.4th at p. ___, 2014 WL 2219042 at pp. \*16-\*17.)

In deciding whether the commonality requirement has been satisfied, courts may consider pattern and practice, statistical and sampling evidence, expert testimony, and other indicators of a given defendant's class-wide practices. (*Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at p. 1054.) In support of class certification, plaintiffs provided the trial court with a sampling plan for determining damages on a class-wide basis. Plaintiffs showed there could be plausible class-wide methods of proof in the form of schedules, driver logs, and testimony. The proposed trial methodology to use statistical sampling at the damages stage does not infringe on Poma's due process right to defend itself. Individualized issues with respect to how often class members may have actually taken off-duty meal and rest breaks will only affect the amount of damages Poma owes after plaintiffs have proven liability. Poma's claim that it has a due process right to assert its defense as to every potential class member is contradicted by California law upholding class actions as a fair and adequate procedure that does not infringe on a defendant's due process rights. (*Duran v. U.S. Bank National Assn., supra,* 59 Cal.4th at p. ___, 2014 WL 2219042 at p. \*24; *Bell v. Farmers Ins. Exchange, supra,* 115 Cal.App.4th at pp. 749-755; *Williams v. Superior Court, supra,* 221 Cal.App.4th at pp. 1365-1366.)

21

In a relatively small class of 59 members whose claims are governed by a common question, the issues of liability and damages are best adjudicated in a class forum even if statistical sampling is used to prove damages.

V

DISPOSITION

The order denying class certification is reversed and the matter is remanded with directions to grant the motion for class certification.  Appellants shall recover costs incurred on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

KING
J.