69 Cal.Rptr.3d 328 (2007)
158 Cal.App.4th 147
Oscar BELL et al., Petitioners,
v.
The SUPERIOR COURT of Los Angeles County, Respondent; H.F. Cox, Inc., Defendant/Real Party in Interest.
No. B199605.
Court of Appeal of California, Second District, Division Three.
November 21, 2007.
As Modified December 20, 2007.
*332 Lawson Law Offices, Antonio M. Lawson, Oakland, and Kendra L. Tanacea, San Francisco; Law Offices of Sheila Thomas and Sheila Thomas; A.J. Kutchins, Berkeley, for Petitioners.
No appearance for Respondent.
Sheppard, Mullin, Richter & Hampton, Charles F. Barker, Richard J. Simmons and Jennifer B. Zargarof, Los Angeles, for Defendant and Real Party in Interest.
CROSKEY, Acting P.J.
Four employees of a petroleum transportation company sought to bring a wage and hour class action against their employer, alleging: (1) the failure to pay overtime; (2) the requirement of off-the-clock work; (3) the failure to provide meal and rest breaks; (4) the incorrect calculation of vacation pay; and (5) the failure to pay pro rata vacation pay upon termination of employment. The plaintiffs filed a motion for class certification. The trial court granted *333 the motion in part, certifying only a class with respect to the claim for failure to pay vacation pay upon termination of employment. In all other respects, the motion was denied. Plaintiffs sought review by means of a petition for writ of mandate. We issued an order to show cause why relief should not be granted and stayed further proceedings. We now conclude the trial court erred in failing to certify a class with respect to the overtime pay and vacation pay claims. We therefore grant the writ petition and direct the trial court to vacate its order, and enter a new and different order granting certification of a class with respect to those claims.

FACTUAL AND PROCEDURAL BACKGROUND
Real party in interest H.F. Cox Inc. ("Cox") does business as Cox Petroleum Transport. Cox is in the business of hauling gasoline and related products. Cox has several terminals in "California from which it dispatches drivers. Most, but not all, of Cox's routes are exclusively within the State of California. Plaintiffs Oscar Bell, Angela Bush, Rodolfo Valle and Harlan Green (collectively "plaintiffs") are current or former driver employees of Cox.[1] On July 25, 2005, they brought the instant action against Cox, seeking to pursue a class action on behalf of current and former Cox drivers, a class of approximately 900 individuals. The operative complaint is the first amended complaint, filed on April 18, 2006. According to their complaint, the plaintiffs sought to represent a class defined as follows: "All persons who are employed, have been employed or will be employed by [Cox] in the State of California who, within four (4) years of the filing of [the] complaint, have worked as a[d]river, and: [¶] Have worked in excess of 40 hours per week and/or eight (8) hours per day without being paid overtime compensation by [Cox]; and/or, [¶] Worked `off-the-clock;' and/or, [¶] Worked without breaks for meals or rest (for at least one year prior to the filing of [the] complaint); and/or [¶] Have not been paid the full amount of promised vacation pay; and/or, [¶] Have not been paid accrued vacation pay at the time they left [Cox's] employ." Plaintiffs alleged causes of action for violation of several sections of the Labor Code, the applicable wage order, and Business and Professions Code section 17200. They sought damages, injunctive relief, punitive damages, and attorney's fees. As the arguments raised in favor of, and against, class certification vary from claim to claim, we discuss each of plaintiffs' claims for relief individually.

1. Unpaid Overtime

It is undisputed that Cox's drivers frequently drove more than eight hours in a day or 40 hours in a week. It is also undisputed that Cox never paid its drivers overtime, despite the fact that California law (Labor Code, § 510) and the governing wage order (Cal.Code Regs., tit. 8, § 11090, subd. 3(A)) require payment at a rate of time-and-one-half for hours in excess of those amounts. Cox took the position that it was an interstate carrier which was therefore exempt from California overtime requirements, under the "motor carrier exemption." The California Industrial Welfare Commission Wage Order for the Transportation Industry requires the payment of overtime, but exempts from the overtime requirements[2] employees *334 "whose hours of service" are regulated by the Department of Transportation pursuant to the Federal Motor Carrier Safety Act.[3] (Cal.Code Regs., tit. 8, § 11090, subd. 3(L)(1).) The exemption is to be construed narrowly and the party asserting it has the burden to establish that it applies. (Klitzke v. Steiner Corp. (9th Cir.1997) 110 F.3d 1465, 1468.) The exemption applies on an employee-by-employee basis, not to an employer in its entirety. (Dole v. Circle "A" Construction, Inc. (D.Idaho 1990) 738 F.Supp. 1313, 1319.) The exemption applies to a person transporting property in interstate commerce. (Id. at pp. 1316-1317.) While, at one time, the Department of Transportation would determine whether a driver was within its jurisdiction on a week-by-week basis, such determinations became too burdensome, and the Department of Transportation now uses a "`4-month rule.'" (Id. at p. 1322.) Thus, if a person drives in interstate commerce once every four months, that person is continuously subject to the Motor Carrier Safety Act, and exempt from California overtime requirements.
While it is apparent that a driver is considered to be transporting property in interstate commerce when the driver crosses state lines, the definition of "interstate commerce" is much broader than that. For example, if goods originate out of state and their intrastate transport is simply part of a lengthier interstate journey, the intrastate delivery is considered part of interstate commerce. (Watkins v. Ameripride Svcs. (9th Cir.2004) 375 F.3d 821, 825.) However, "indefinite storage in a warehouse may transform good shipped from out-of-state into intrastate deliveries." (Id. at p. 826.) "[I]f a company places orders with an out-of-state vendor for delivery to specified intrastate customers, a temporary holding of the goods within an intrastate warehouse for processing does not alter the interstate character of the transportation chain culminating in delivery to the customer. If, on the other hand, a company places orders with an out-of-state vendor, with delivery to the company's intrastate warehouse for future delivery to customers yet to be identified, the transportation chain culminating in delivery to the customer is considered intrastate in nature." (Ibid.) We will refer to this as the "intrastate warehouse rule." "Whether transportation is interstate or intrastate is determined by the essential character of the commerce, manifested by [the] shipper's fixed and persisting transportation intent at the time of the shipment, and is ascertained from all of the facts and circumstances surrounding the transportation." (Klitzke v. Steiner Corp., *335 supra, 110 F.3d at p. 1469; italics in original.)
A driver is considered to be driving in interstate commerce if the driver is called upon to drive in interstate commerce as part of the driver's regular employment, or, even if the driver has not personally driven in interstate commerce, if, because of company policy and activity, the driver could reasonably be expected to drive in interstate commerce. As such, if a carrier does interstate work and assigns drivers randomly to that driving, all of its drivers are considered subject to the Motor Carrier Safety Act. (Dole v. Circle "A" Construction, Inc., supra, 738 F.Supp. at p. 1322.) However, a driver is not subject to the Motor Carrier Safety Act if there is no possibility of driving interstate or the possibility is remote. (Ibid.)
In light of this legal framework, we now discuss the facts and procedural history relevant to plaintiffs' claim for overtime. It appears that many of Cox's drivers, when hired, were told that they would only drive in California. Plaintiffs also submitted evidence that, when Cox had an out-of-state haul, it would ask for volunteers. Nonetheless, Cox took the position that all of its driverseven those who never crossed state lineswere subject to the Motor Carrier Safety Act, and therefore exempt from overtime. Indeed, Cox apparently instructed its drivers as follows, "Cox Petroleum Transport is an Interstate carrier, any hours worked over 8 hours a day or 40 hours a week will NOT be paid as overtime pay. Driver[s] will be paid straight time only."[4] In May 2005, Cox circulated a document for its drivers to sign, acknowledging that Cox "is an Interstate Carrier that is involved in Interstate Commerce" and that they "are in a pool of drivers that will be used in Interstate Commerce" and "may be asked and/or required to run loads/shifts that cross State lines." On July 20, 2005, Cox issued a memorandum to all of its drivers stating, "As you may already be aware, there has been some discussion over the last several months as to the status of Cox Petroleum Transport as an Interstate Carrier. In order to maintain its status as an interstate carrier, the company is making a few changes in its policies and procedures as discussed below." The changes included an "anticipated dispatch" to Arizona, which would be a "required" run for each driver. One week later, Cox issued a second memorandum to drivers at three of its facilities. The memorandum stated, "We have listened to your comments and concerns regarding the out of state requirements that were the subject of last week's memo. We are holding off putting this policy in effect and reviewing this. Accordingly we will continue to do business as usual and handle the loads as we have in the past."
In 2005, Cox was audited by the U.S. Department of Labor, to determine whether drivers at its Long Beach and Bloomington, California facilities were exempt from federal overtime requirements under the motor carrier exemption during a two-year audit period. The Department of Labor ultimately concluded that the drivers at those locations were, in fact, exempt.[5] What is significant for our purposes is an October 31, 2005 letter sent by Cox to the Department of Labor arguing *336 for the application of the exemption. Specifically, Cox did not argue for the application of the exemption on a driver-by-driver or route-by-route basis. Instead, Cox argued that it assigns trips "indiscriminately" among its drivers,[6] and that it hauls certain products across state lines and transports others within California as a part of continuous interstate movement.[7] Similarly, a "Narrative Report" from the Department of Labor states that the exemption "is applicable to all drivers during the period of investigation. Different drivers from all terminals hauled Transmix, contaminated diesel fuel, from Washington [sic] to other states such as Nevada and Arizona. All drivers could be called upon to haul goods that are moving in interstate commerce."
In their complaint, plaintiffs acknowledged the existence of the motor carrier exemption, but simply took the position that since they never drove across state lines or carried cargo destined for another state, the motor carrier exemption did not apply. In their motion for class certification, plaintiffs acknowledged that Cox relied on the motor carrier exemption with respect to their overtime claim, but argued that this was a "sham" defense that would not hamper class certification because Cox only made "a few, isolated trips across state lines." Plaintiffs argued that Cox "uniformly" classified all of its workers as exempt, which they argued raised a common issue of law as to whether they were, in fact, all exempt. In addition to their evidence that many drivers had been told they would only drive in California and that Cox staffed out-of-state runs with volunteers, plaintiffs supported their motion for class certification with evidence that Cox advertised for drivers with language indicating the job was for "local work" and that drivers would "return home daily."
In opposition to the class certification motion, Cox argued that class certification with respect to the overtime claim should be denied as the application of the motor carrier exemption is a fact-intensive inquiry that must be performed on a driver-by-driver, trip-by-trip basis. Cox argued that resolution of its motor carrier exemption defense would necessitate determinations regarding: whether each driver crossed state lines; whether the driver refused interstate trips and why; whether each intrastate trip was part of an interstate journey (implicating inquiries into the product hauled and the shipper for whom it was hauled); and whether the driver reasonably believed that he or she could be called upon to drive interstate. Cox stated that "[t]his is the time intensive analysis that this Court would be required to perform," and argued that classwide resolution of the issue was therefore impossible because "the claims of all drivers cannot be determined by hearing testimony and evidence from a few drivers."[8] Cox supported *337 its opposition with declarations from drivers who indicated both that they had been told that Cox was an interstate carrier and that they, in fact, drove across state lines.
The trial court denied the motion for class certification with respect to the overtime claim, on the basis that common issues would not predominate over individual issues and that the case would not be manageable. The court concluded that Cox's decision to classify all of its drivers as exempt "might be proper as to some of the drivers, for some of the time, and improper for other drivers at other times." The court concluded that the determination of which drivers were properly classified as exempt was a fact-specific inquiry that would involve "having to determine whether drivers were exempt on a week-by-week, driver-by-driver basis. Moreover, the intent of the shipper is relevant to the overtime exemption and therefore this Court would also have to consider the intent of each shipment." As such, the trial court concluded that the application of the exemption was not a proper subject for adjudication in a class action.

2. Off-the-clock work

With respect to the claim for compensation for off-the-clock work, there is no real dispute that the law requires employers to pay their employees for all hours worked. (Lab.Code, § 200.) The issue raised by plaintiffs' complaint is whether Cox required its drivers to work off-the-clock. Each of Cox's trucks was fitted with a "Qualcomm" terminal. At the beginning of each shift, a driver would log on to the Qualcomm system, and would log off at the end. A driver's pay was calculated based on the hours recorded on the Qualcomm system. Additional hours could be reported by means of a pay exception form. Without a completed (and approved) pay exception form, a driver could not be compensated for any time which had not been logged into the Qualcomm system. As this litigation proceeded, plaintiffs' claim for off-the-clock work ultimately focused on two types of such alleged work. First, plaintiffs alleged they were not paid for the time spent waiting for their trucks to arrive at the start of their shifts ("waiting time"). Second, plaintiffs alleged they were required to perform certain pre- and post-shift administrative tasks before logging in and after logging out, respectively ("paperwork time").[9] As to the waiting time claim, Cox agreed that it did not always pay drivers for their waiting time. Cox explained that it had a "call-in" policy, by which all drivers were required to phone in two hours before their shift to confirm that a truck would be available. If the driver called in and had been told a truck would be available, the driver could fill out a pay exception form for any waiting time, but if the driver had not called in, Cox would not pay. As to paperwork time, there is a dispute as to whether Cox required its drivers to complete paperwork when not logged on the Qualcomm system, and whether the drivers were otherwise compensated for paperwork time.
In support of their motion for class certification, plaintiffs submitted declarations and depositions of themselves and other Cox drivers, indicating off-the-clock work for both waiting time and paperwork time. As to paperwork time, the declarations were not uniform. For example, plaintiff *338 Bell stated that he received an additional half-hour of pay for paperwork time, but that his paperwork time often took more than 30 minutes. Driver Felix Rivera stated that his paperwork time could be up to 30 minutes, but he was not paid for any of it. Driver Angelica Navarro agreed. Driver Brian Smith took the position that, for one month, drivers were not paid for paperwork time, but that, after they complained, the policy was changed to give them an additional half-hour of pay. Plaintiffs relied on an excerpt from Cox's Driver Operating Procedures and Training Program, which indicated that drivers are to do their paperwork before logging on the Qualcomm system. But plaintiff Valle testified that he had been instructed to log on the Qualcomm system when he first came on duty, and that signing off was the last thing he did at the end of each day. There were also some discrepancies as to waiting time. Plaintiff Valle testified that he would be paid for waiting time if he had called in advance, but not if he had failed to do so. Plaintiff Green testified that his truck would be late 80% of the time, but that he would get a pay exception only "if the truck was really late." Plaintiff Bush's declaration was silent as to the topic of off-the-clock work, suggesting that she had no issues with off-the-clock work.
In opposition to the motion for certification, Cox argued that the claim for off-the-clock work was inappropriate for class certification as it did not raise common issues of law or fact. Cox noted the disputes in the declarations and depositions submitted by plaintiffs, and argued that these disputes indicated that each instance of off-the-clock work would have to be adjudicated independently, based on its own facts. Additionally, Cox submitted declarations of other drivers indicating that they received pay exceptions for waiting time if they had called in, and that they completed their paperwork while logged in to the Qualcomm system. Cox also submitted the declaration of its president to the effect that drivers who were paid on a "trip standard," as opposed to hourly wages, would receive an extra half-hour pay for paperwork time, while hourly employees were not. However, he indicated that all of the named plaintiffs were paid hourly.[10] Safety Supervisor Ferrill's deposition indicated that drivers were to log in the Qualcomm system before doing any work, and testified that the Driver Operating Procedures and Training Program excerpt which stated the opposite was simply wrong.
The trial court denied the motion for class certification with respect to the claim for off-the-clock work on the basis that there was no way to determine which members of the proposed class had actually worked off the clock. Given that plaintiffs themselves disagreed on when or if they had worked off the clock, the court found no common issues with respect to this claim.
In their petition for writ of mandate, plaintiffs argue that the Driver Operating Procedures and Training Program excerpt constitutes a written policy that applied to all drivers, requiring off-the-clock work. As to waiting time, plaintiffs argue in their reply brief, for the first time,[11] that what *339 they are challenging is Cox's call-in policy that deprives drivers of payment for waiting time if they failed to call in advance.

3. Meal and rest breaks

With respect to the claim for meal and rest breaks, it is again undisputed that the law requires employers, including Cox, to provide employees meal and rest breaks. (Lab.Code, §§ 226.7, subd. (a), 512, Cal. Code Regs., tit. 8, § 11090, subds. 11 & 12.) In their complaint, plaintiffs allege that Cox has "consistently required drivers to work without breaks for meals or rest periods."
In their motion for class certification, plaintiffs argued that Cox "imposes tight delivery schedules that do not afford drivers time for breaks. Consequently, drivers rarely, if ever, take meal or rest breaks. The evidence is clear that Cox is aware its drivers cannot take breaks and deliver product according to schedule." Plaintiffs submitted declarations of themselves and other drivers to the effect that they had been trained by Cox not to take breaks and to eat while driving. Some declarations indicated the drivers had been told to break when their trucks were being loaded or unloaded. The declarations indicated that Cox demanded a tight delivery schedule that would not allow for breaks.
In support of plaintiffs' certification motion, plaintiffs submitted various Cox Personnel Manuals and the Driver Orientation Manual. Although these documents were submitted by plaintiffs in connection with other claims, they speak to the issue of meal and rest breaks. The Personnel Manuals specifically include terms providing for meal and rest breaks for administrative employees, but are silent on the issue of breaks for drivers. The Driver Orientation Manual, however, indicates that drivers are permitted to take 15-minute rest breaks and a 30-minute meal break off-the-clock,[12] and can take further breaks off-the-clock if necessary for safety reasons.
In opposition, Cox submitted the declaration of its president indicating that drivers are scheduled for 10 hours of work within a 12-hour period to allow for breaks. He further noted that all terminals have break areas. Cox submitted declarations from drivers indicating that they took breaks, were permitted to take breaks, and saw others taking breaks. Indeed, the declarations indicated that Cox stressed the importance of breaks and allowed meal and rest breaks at the discretion of its drivers. Further, Cox submitted the declarations of drivers who had seen two of the named plaintiffs taking breaks.
In their reply, plaintiffs argued, for the first time, that Cox's failure to maintain records of drivers' meal breaks raised a common issue of fact. They further argued that whether breaks were permitted raised a common question.
The trial court denied the motion for class certification with respect to the claim for meal and rest breaks on the basis that individual issues predominated over common issues. The court noted that the declarations filed by both parties indicated that some employees were permitted to take, and did take, meal and rest breaks, while others did not. As there was no way *340 of determining which drivers were permitted to take breaks and which were not, individual issues predominated. The court specifically noted that "[p]laintiffs have not provided the Court with any evidence that there was a Company-wide policy prohibiting rest breaks or meal breaks."
In their petition for writ of mandate, plaintiffs argue, for the first time, that Cox actually had a "written policy preclud[ing] drivers from taking meal breaks." Plaintiffs argue that Cox's personnel manuals "state[ ] that drivers are not entitled to meal and rest breaks." For this proposition, plaintiffs are not relying on any statement in the manuals which affirmatively denies breaks to drivers; they argue by implication that the provision which allows breaks for administrative personnel but is silent as to breaks for drivers is, in fact, a policy precluding drivers from taking breaks.

4. Vacation pay

Finally, it is undisputed that Cox has a written policy whereby its employees are paid a certain number of "weeks" of vacation based on their years of service with the company.[13] However, while non-drivers receive vacation pay in the amount of their regular rate of pay, drivers receive a fixed sum. Initially, that amount was $500 per week, although in 2005, it increased to $650 per week. In their complaint, plaintiffs alleged that Cox "promised to provide employees vacation pay in the amount of their wages.
In support of their motion for class certification, plaintiffs submitted declarations of themselves and other drivers indicating that they were paid the flat rate for their vacation pay, rather than an amount based on their average salary. While most of the declarations indicated that the drivers were paid a flat rate even though Cox's policy states that drivers were to "receive a certain number of weeks of vacation per year," Angelica Navarro declared that she had "understood" that she was to get one week's vacation pay.
In opposition to the motion for class certification, Cox argued that plaintiffs' complaint was based on a "promise" to pay vacation pay based on weekly salary, which, according to plaintiffs' own evidence, few drivers believe had been made. Cox argued that the claim as alleged in plaintiffs' complaint would require evidence of such a promise, and that the existence of such a promise would vary from driver to driver, making the claim unsuitable for class resolution. In their reply in support of the motion, plaintiffs argued that their claim for vacation pay was based on the written policy itself, without reference to any promise.
At the hearing on the motion for class certification, plaintiffs' counsel clarified that the issue is not whether the drivers were promised more than $500 per week, but whether payment of $500 per week is itself improper under the law. However, at a subsequent hearing on the motion, plaintiffs' counsel stated that the argument "is that the company failed to pay its driver employees for vacation during the time that they were there in terms of paying them only for a certain number, a lump sum amount of money as opposed to connecting it to what their hourly wage was and basing it on the weekly salary, which they told them they would pay for vacation."
The court denied certification with respect to the claim for vacation pay, on the *341 theory that the claim is based on an allegation that some drivers were promised an amount of vacation pay higher than what they had been paid, and that the existence of any such promise to any individual driver raised an individual question of fact. In plaintiffs' writ petition, they again disclaim any intention of relying on a promise made to individual drivers. Instead, they argue, "the sole question is the legality of Cox's written policy of limiting vacation wages to an amount less than drivers' actual earnings."

5. Definition of class

The definition of the class which plaintiffs sought to certify changed throughout the course of the litigation. In their complaint, plaintiffs alleged the class was: "All persons who are employed, have been employed or will be employed by [Cox] in the State of California who, within four (4) years of the filing of [the] complaint, have worked as a[d]river, and: [¶] Have worked in excess of 40 hours per week and/or eight (8) hours per day without being paid overtime compensation by [Cox]; and/or, [¶] Worked `off-the-clock;' and/or, [¶] Worked without breaks for meals or rest (for at least one year prior to the filing of [the] complaint); and/or, [¶] Have not been paid the full amount of promised vacation pay;...."
In their notice of motion for class certification, plaintiffs sought to certify "a class of former and current employees of Cox ... who have been denied meal and rest periods, overtime and vacation wages[,] and forced to work `off the clock' in violation of California law." In their memorandum of points and authorities, however, plaintiffs argued that they sought to certify a class "to include all former and current Cox drivers who were employed from July 25, 2001 to the present."
At the hearing on the motion for class certification, the court expressed concern that the proposed class as defined in the complaint was somewhat merits-based in that it required determining which drivers had been wronged by Cox in order to determine the members of the class. Plaintiffs' counsel responded that plaintiffs sought to certify the class of all hourly drivers who were employed at Cox from July 2001 to the present. As plaintiffs had redefined the class, the court allowed further briefing on the issue of the class definition, with Cox to file the first brief and plaintiffs to respond.
Between the time of the hearing and Cox's brief, plaintiffs again changed the definition of the class they sought to certify. As confirmed in a letter from defendants' counsel, plaintiffs' counsel had informed defendant's counsel that they sought to certify the class of: "All drivers of [Cox] employed from July 25, 2001 to the present who were denied overtime; all drivers of [Cox] employed from July 25, 2001 to the present who were denied vacation pay; all drivers of [Cox] employed from July 25, 2001 to the present who were denied pay for off-the-clock work; and all drivers of [Cox] employed from July 25, 2004 to the present who were denied meal breaks and rest periods." Cox argued that this definition was again merits-based, and that "the only way to determine to whom a class notice must be sent is to determine the merits as to each claim for each individual."
Plaintiffs filed a reply in which they set forth yet another definition of the class they sought to certify: "1. All truck drivers employed in California by [Cox] from July 25, 2001 to the present who worked more than eight (8) hours in a day, and/or forty (40) hours in a week and were not paid overtime. 2. All truck drivers employed in California by [Cox] from July 25, *342 2004 to the present who did not take meal breaks and/or rest breaks. 3. All truck drivers employed in California by [Cox] from July 25, 2001 to the present who did not receive pro rata payment of vacation wages, either during their employment, upon termination, or both. 4. All truck drivers employed in California by [Cox] from July 25, 2001 to the present who worked hours for which they were not compensated." Having eliminated the concept of the "denial" of pay, plaintiffs argued that their class definition was not merits-based, but was based on the objective facts of hours worked, breaks taken (or not) and pay received. In the alternative, plaintiffs argued that "the court could define an appropriate and readily ascertainable class as follows: `All truck drivers employed in California by [Cox] at any time from July 25, 2001, through the present.' " This is, with the exception of the omitted restriction to hourly employees, the precise definition plaintiffs' counsel had offered at the hearing, yet withdrew prior to Cox's submission of a supplemental brief.[14]
A second hearing was held. At this hearing, the court concluded that, under the class definition ultimately proposed by plaintiffs' counsel, the litigation would require a fact-specific merits-based determination of each potential class member's claims to determine whether that individual is a member of the class. The trial court's order incorporated this determination.

6. Superiority

In its opposition to the motion for class certification, Cox argued that class certification should be denied because plaintiffs had failed to show that a class action was a superior forum for resolving the issues raised. The trial court did not address this argument at the hearing. However, at the close of the hearing, the trial court instructed Cox's counsel to prepare a proposed order, and told counsel to "includ[e] the reasons given on the record today for the denial and any other that the court considered in your papers."[15] As a result, the court's order denying certification also included findings that a class action is not, in fact, superior. The court concluded that there is a reasonable possibility that class members would nonetheless individually prosecute their claims, because an individual driver's overtime claim amounted to approximately $10,000 per year. The court further noted that individual claims could be pursued in administrative procedures before the Labor Commissioner under Labor Code section 98, and that such administrative procedures would be speedy, informal, and free.

*343 ISSUES PRESENTED

The question presented by this writ petition is whether the trial court abused its discretion in denying the motion for class certification with respect to plaintiffs' claims for overtime, off-the-clock work, meal and rest breaks, and vacation pay. With respect to each claim, we consider whether common questions of law and fact predominate and whether plaintiffs have identified an ascertainable class. We also consider the issue of superiority.

DISCUSSION

1. Standard of Review

We review a trial court's ruling on a motion for class certification for abuse of discretion. (Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319, 326, 17 Cal.Rptr.3d 906, 96 P.3d 194.) "`Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.... [Accordingly,] a trial court ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used [citation];, or (2) erroneous legal assumptions were made [citation]" [citation].... "Any valid pertinent reason stated will be sufficient to uphold the order."' [Citations.]" (Id. at pp. 326-327, 17 Cal.Rptr.3d 906, 96 P.3d 194.) Where a certification order turns on inferences to be drawn from the facts, we have no authority to substitute our decision for that of the trial court. (Id. at p. 328, 17 Cal.Rptr.3d 906, 96 P.3d 194.)

2. Law of class certification

"Code of Civil Procedure section 382 authorizes class actions `when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court....' The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. [Citation.] The `community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (Sav-On Drug Stores, Inc. v. Superior Court, supra, 34 Cal.4th at p. 326, 17 Cal. Rptr.3d 906, 96 P.3d 194.) At issue in this appeal is the ascertainability factor and the first community of interest factor.
It is important to distinguish the requirements of ascertainability and community of interest. "Ascertainability is required in order to give notice to putative class members as to whom the judgment in the action will be res judicata. Common questions of law and fact are required in order to assure the interests of the litigants and the court are furthered by permitting the suit to proceed as a class action `rather than in a multiplicity of separate suits.'" (Hicks v. Kaufman & Broad Home Corp. (2001) 89 Cal.App.4th 908, 914, 107 Cal.Rptr.2d 761 [Fn. omitted.].)
"Whether a class is ascertainable is determined by examining (1) the class definition, (2) the size of the class, and (3) the means available for identifying class members." (Reyes v. Board of Supervisors (1987) 196 Cal.App.3d 1263, 1271, 242 Cal.Rptr. 339.) Ascertainability can best be achieved "by defining the class in terms of objective characteristics and common transactional facts," rather than defining it in such a way that proposed class members must establish the merits of their case in order to be considered part of *344 the class. (Hicks v. Kaufman & Broad Home Corp., supra, 89 Cal.App.4th at pp. 914-915, 107 Cal.Rptr.2d 761.) However, if the named plaintiff improperly incorporates the merits in the definition of the class, "the court itself can and should redefine the class where the evidence before it shows a redefined class would be ascertainable." (Id. at p. 916, 107 Cal.Rptr.2d 761.) Class certification can be denied for an unascertainable class when the proposed definition is overbroad and the plaintiff offers no means by which only those class members who have claims can be identified from those who should not be included in the class. (Akkerman v. Mecta Corp., Inc. (2007) 152 Cal.App.4th 1094, 1100-1101, 62 Cal.Rptr.3d 39 [class defined as all patients in California who received electroconvulsive therapy with defendant's device is overbroad when the claim is for insufficient warnings and there is no way to determine which patients relied on defendant's warnings as opposed to those provided by their physicians or consent forms].) However, class certification should not be denied on overbreadth grounds when the class definition is only slightly over-inclusive. (Sav-On Drug Stores, Inc. v. Superior Court, supra, 34 Cal.4th at p. 337, 17 Cal.Rptr.3d 906, 96 P.3d 194 [no bar to certification on the assumption that, despite defendant's common practices, some members of the class were not harmed]; Aguiar v. Cintas Corp. No. 2 (2006) 144 Cal.App.4th 121, 136, 50 Cal.Rptr.3d 135 [ascertainability is not defeated if the class may be overinclusive; nonmembers can be eliminated from the class at a later date]; Bell v. Farmers Ins. Exchange (2004) 115 Cal.App.4th 715, 743, 9 Cal.Rptr.3d 544 [that 5.7% of class members lack an interest in the objectives of the litigation is a "marginal element" that does not "make the class less ascertainable"].)
As to the first community of interest factor, the plaintiffs' "burden on moving for class certification ... is not merely to show that some common issues exist", but, rather, to place substantial evidence in the record that common issues predominate." (Lockheed Martin Corp. v. Superior Court (2003) 29 Cal.4th 1096, 1108, 131 Cal.Rptr.2d 1, 63 P.3d 913.) A court errs if it denies class certification on a preliminary assessment that the cause of action alleged on behalf of the class lacks merit. (Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 433-434, 97 Cal.Rptr.2d 179, 2 P.3d 27.) "As the focus in a certification dispute is on what type of questions-common or individual-are likely to arise in the action, rather than on the merits of the case [citation], in determining whether there is substantial evidence to support a trial court's certification order, we consider whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." (Sav-On Drug Stores, Inc. v. Superior Court, supra, 34 Cal.4th at p. 327, 17 Cal.Rptr.3d 906, 96 P.3d 194.) "A trial court ruling on a certification motion determines `whether ... the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.'" (Id. at p. 326, 17 Cal.Rptr.3d 906, 96 P.3d 194.) "In examining whether common issues of law or fact predominate, the court must consider the plaintiffs legal theory of liability. [Citation.] The affirmative defenses of the defendant must also be considered, because a defendant may defeat class certification by showing that an affirmative defense would raise issues specific to each potential class member and that the issues presented by that defense predominate over common issues." (Walsh v. IKON *345 Office Solutions, Inc. (2007) 148 Cal. App.4th 1440, 1450, 56 Cal.Rptr.3d 534.) "It is well established that the necessity for an individual determination of damages does not weigh against class certification. The community of interest requirement recognizes that `ultimately each class member will be required in some manner to establish his individual damages (Bell v. Farmers his. Exchange, supra, 115 Cal.App.4th at p. 742, 9 Cal.Rptr.3d 544.)
We again note that we review the trial court's ruling for abuse of discretion only. A decision certifying a class will be upheld if there is substantial, even if disputed, evidence that common policies or practices of the defendant resulted in all members of the potential class being affected in the same manner. (Sav-On Drug Stores, Inc. v. Superior Court, supra, 34 Cal.4th at p. 329, 17 Cal.Rptr.3d 906, 96 P.3d 194 [record contained substantial, if disputed, evidence that "deliberate misclassification" of all of defendant's operating managers and assistant managers was defendant's policy or practice].) Similarly, a decision denying class certification will be upheld if there is substantial, even if disputed, evidence that individual issues will predominate in the determination of liability. (See Walsh v. IKON Office Solutions, Inc., supra, 148 Cal.App.4th at p. 1454-1456, 56 Cal.Rptr.3d 534 [record contained substantial evidence that the determination of whether each account manager was exempt from overtime would require an individual determination because of variance in the way they performed their duties]; Dunbar v. Albertson's, Inc. (2006), 141 Cal.App.4th 1422, 1431, 47 Cal. Rptr.3d 83 [similar].)

3. Unpaid overtime

The trial court denied certification as to the claim for unpaid overtime on the bases that common questions of law and fact did not predominate, and that the class was not ascertainable since plaintiffs' definition of the class was merits-based. We first consider whether common issues predominate.
Preliminarily, we note that plaintiffs challenge the trial court's order as an improper evaluation of the merits of Cox's motor carrier exemption defense. We disagree. The court did not consider whether any of Cox's drivers were in fact exempt under the motor carrier exemption. Instead, the court simply considered whether the motor carrier exemption raised issues which could be resolved commonly or necessitated individual adjudication. This was proper. However, we conclude the trial court's determination that individual issues predominated is not supported by substantial evidence. Indeed, all of the evidence supports the conclusion that the motor carrier exemption, as asserted by Cox, is more efficiently adjudicated on either a terminal-by-terminal basis, or for all of Cox's drivers at once.[16] To the extent any of Cox's drivers drove across state lines as often as once every four months, it is apparent that those drivers are covered by the motor carrier exemption and should be excluded from the class with respect to the claim for overtime. The real dispute in this case focuses on those drivers who are not considered exempt solely on the basis of routes they may have driven across state lines. Those drivers may or may not be exempt, based on the routes they could have reasonably expected to be driving, and whether those routes were considered part of interstate commerce even when wholly within California. *346 These questions cry out for common adjudication, because all of the evidence indicates that, at least with respect to Cox's routes in California, any driver could be assigned any route.[17] Indeed, both Cox's position before the Department of Labor and the Department of Labor's own conclusion were based on consideration of all of the routes run from the terminals in question, not an individual driver-by-driver analysis. In this case, Cox argued that the claims of all of its drivers could not "be determined by hearing testimony and evidence from a few drivers;" But this is not the test. Instead, the claims of any one driver could only be resolved by considering testimony and evidence regarding all of the routes the driver could reasonably have been assigned. Since every driver could have been assigned any of Cox's California routes, the claim of each driver implicates all of Cox's California routes.[18] Denial of class certification would require 900 individual trials, each of which would consider the entirety of routes driven by Cox drivers in California. There is no evidence to support the trial court's conclusion that individual issues predominate, as there is no evidence that each driver could not reasonably have been assigned any of Cox's routes that did not themselves cross state lines.[19]
We also conclude the class is ascertainable. To the extent plaintiffs' proposed definitions improperly incorporated the merits of the claim, the trial court should have redefined the class.[20] The class can easily be defined as all of Cox's hourly employees, over the relevant period, who worked in excess of eight hours per day and/or 40 hours per week, and who did not drive at least one route across state lines once every four months. This class is based on objective criteria and can easily be determined by Cox's records. It does not include any drivers who we already know to be exempt from overtime requirements. The fact that the class may ultimately turn out to be overinclusivein that it includes some drivers who might also have been subject to the motor carrier exemptionsis not a bar. Whether these drivers are subject to the motor carrier exemption is, in fact, that main question that is at issue in this action. (See Bell v. Farmers Ins. Exchange, supra, 115 Cal. App.4th at p. 744, 9 Cal.Rptr.3d 544 [most class actions contemplate the eventual individual proof of damages, which impliedly entails the possibility that some class members will have none].) We therefore conclude the court erred in denying certification with respect to the unpaid overtime claim.

4. Off-the-clock work

The trial court denied certification as to the claim for off-the-clock work on the bases that common questions of law and fact did not predominate, and that the class was not ascertainable since plaintiffs' definition of the class was merits-based. We first consider whether common issues *347 predominate, as to both of plaintiffs' off-the-clock claimswaiting time and paperwork time.
As to waiting time, it is largely undisputed that Cox paid for waiting time when the driver had called in, and did not pay when the driver had not called. To the extent plaintiffs seek to challenge this policy, it appears to raise a common issue, as the policy was apparently applied to all of Cox's drivers. However, plaintiffs only clearly asserted that they were challenging this policy in their reply brief in support of their writ petition.[21] Plaintiffs cannot be heard to argue that the trial court erred by failing to find this common question prevailed when they never argued it before the trial court. As we have concluded that the class must be certified with respect to the overtime claim, it is left to the trial court's discretion on remand whether to allow plaintiffs to amend their complaint to challenge the call-in policy.[22]
As to paperwork time, plaintiffs argue that a common issue exists in light of Cox's written policy directing drivers to complete their paperwork before logging in. This is, in fact, sufficient evidence of a common policy such that, had the trial court decided to certify the class, we would affirm the court's order. However, that is not the test. We are instead concerned with whether substantial evidence supports the trial court's conclusion that common issues do not predominate. The court had before it substantial evidence that some employees did not complete any paperwork off-the-clock, some employees received an additional half-hour of pay for their paperwork time, and some employees worked off-the-clock without any compensation. Moreover, the trial court had before it substantial evidence from which it could conclude that there was no common objectively-identifiable fact that separated those drivers who did their paperwork off-the-clock and were not compensated for it from the other drivers. As such, we affirm the trial court's order denying class certification with respect to the paperwork time portion of the off-the-clock work claim.

5. Meal and rest breaks

The trial court denied certification as to the claim for meal and rest breaks on the bases that common questions of law and fact did not predominate, and that the class was not ascertainable since plaintiffs' definition of the class was merits-based. We consider whether the evidence supported the trial court's conclusion that common issues do not predominate.
Before the trial court, plaintiffs argued that Cox had an unwritten policy of scheduling too much work to allow drivers to take meal and rest breaks. Cox responded with evidence that: (1) routes are assigned with sufficient time for drivers to take breaks; (2) drivers are trained to take breaks; and (3) some drivers do take breaks. Cox's evidence provides substantial evidence that there is no uniform policy *348 or practice forbidding or preventing breaks, and that any driver who did not take the necessary breaks did so for reasons which require independent adjudication. We therefore affirm the trial court's conclusion that common issues do not predominate.
We note that, in their petition for writ of mandate, plaintiffs, for the first time, rely on the provisions in Cox's personnel manuals which provide breaks for administrative personnel but are silent as to breaks for drivers. The silence of the manuals is not a policy forbidding breaks for driversthis is especially true given the provisions in the Driver Orientation Manual providing for breaks for drivers. The personnel manuals do not provide a basis for reversing the trial court's decision.[23]

6. Vacation pay

The court denied certification with respect to the claim for vacation pay on the theory that the claim is based, on an allegation that some drivers had been promised an amount of vacation pay higher that what they were paid, and that the existence of any such promise to any individual driver raised an individual question of fact. In their petition for review, plaintiffs argue that they are challenging only Cox's policy of paying a flat rate of vacation pay, not any outside promises of additional pay.
The record lacks precision as to whether plaintiffs' claim is based on promises to pay additional vacation pay, or is simply a challenge to Cox's admitted policy. The confusion appears to have arisen from the language in Cox's personnel manuals themselves, in which employees are first told that they will receive a number of "weeks" of vacation pay, and are later told that, for drivers, "weeks" is defined in terms of a flat rate, and not their weekly pay at all. Thus, when plaintiffs allege that Cox "promised" or "told" them that they would receive vacation pay in the amount of their wages, it is not clear whether plaintiffs are simply referring to the first part of the written policy, or some other promise.
This much is clear: (1) plaintiffs' complaint, although using "promised" language, contains no cause of action for fraud, so any outside "promise" does not appear to be a necessary part of plaintiffs' causes of action; (2) in their reply in support of the certification motion and at the first hearing on the class certification motion, plaintiffs very clearly indicated that their claim was based only on Cox's policy; (3) if plaintiffs had been relying on the existence of an outside promise, they submitted very little evidence of any promise, and no evidence that it was common; and (4) after the complaint, none of plaintiffs' proposed class definitions contained reference to any promise. Under the circumstances, we conclude that plaintiffs' claim for vacation pay based on the policy itself was before the trial court, and should have been considered a basis for class certification.
We conclude that such a class meets all the requirements for class certification. There is, indisputably, a common question which predominates: whether Cox's written vacation pay policy is enforceable. There is, also, an ascertainable class: all current and former Cox drivers. The *349 class action therefore should be permitted to proceed.

7. Superiority

Finally, we address the trial court's finding that the class action process is not a superior means of resolving the parties' dispute. The trial court's finding was based on a determination that, since the overtime claims average $10,000 per year, drivers would be likely to pursue their claims individually. The court also recognized the availability of administrative proceedings before the Labor Commissioner as another factor in favor of its finding that a class action is not superior.
The party seeking class certification has the burden to establish that class action will be a superior means of resolving the dispute. (Aguiar v. Cintas Corp. No. 2, supra, 144 Cal.App.4th at pp. 132-133, 50 Cal.Rptr.3d 135.) Our Supreme Court recently addressed the issue of the superiority of a class action in a wage and hour case. In Gentry v. Superior Court (2007) 42 Cal.4th 443, 64 Cal. Rptr.3d 773, 165 P.3d 556, the Supreme Court concluded that both factors on which the trial court relied in this casethe size of some claims suggesting individual enforcement and the possibility of administrative proceedings before the Labor Commissionerwere insufficient to deny class certification. The court noted that there are many other factors in favor of class resolution in such cases, including that current employees might not bring individual claims out of a fear of retaliation, that current employees might not know of their rights (especially where, as here, the employer has affirmatively told them they are not eligible for overtime), and the necessity of class actions to give teeth to wage and hour laws even when some employees may have claims large enough for individual enforcement.[24] (Id. at p. 459-462, 64 Cal.Rptr.3d 773, 165 P.3d 556.) The court specifically held that an administrative action before the Labor Commissioner was an inadequate substitute for a class action. (Id. at p. 465, 64 Cal.Rptr.3d 773, 165 P.3d 556.) As such, the trial court's conclusion that a class action is not superior cannot stand.[25]

DISPOSITION
The petition for writ of mandate is granted. The trial court is directed to vacate its order denying class certification in part, and issue a new and different order granting class certification with respect to plaintiffs' claims for unpaid overtime and vacation pay, as well as the previously certified claim for pro rata vacation pay on termination. In all other respects, the matter is remanded for further proceedings consistent with this opinion. Plaintiffs shall recover their costs on this writ proceeding.
We Concur: KITCHING and ALDRICH, JJ.
NOTES
[1] At the time of their complaint, Bell and Bush were currently employed by Cox. They are no longer Cox employees.
[2] There is a second exemption for employees whose hours of service are governed by California Code of Regulations, title 13, section 1200. (Cal.Code Regs., tit. 8, § 11090, subd. 3(L)(2).) The application of this exemption is determined by the size and weight of the truck. (Cal.Code Regs., tit. 13, § 1200; see Veh.Code, § 34500.) In its answers to interrogatories, Cox relied on this exemption as well. It is unclear whether Cox continues to rely on this exemption.
[3] The wage order exempts employees whose hours of service "are regulated by" the Department of Transportation. (Cal.Code Regs., tit. 8, § 11090, subd. 3(L)(1).) The Fair Labor Standards Act ("FLSA") exempts employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." (29 U.S.C. § 213(b)(1).) This discrepancy has led one judge to suggest the possibility that "[t]he scope of the Motor Carrier Act exemption from the FLSA ... may be broader than under [the] Wage Order ..., because the FLSA exemption is determined by the power of the Secretary to regulate, not by the regulations actually adopted." (Watkins v. Ameripride Services (9th Cir.2004) 375 F.3d 821, 830 (cone. opn. of Fletcher, J.).) This issue is not raised by the parties, who assume the scope of the exemption from California law is the same as the scope of the exemption from the FLSA.
[4] This is an excerpt from Cox's "Driver Orientation Manual." The manual appears to be a print out of a PowerPoint presentation. Michael Ferrill, who served as Cox's Safety Supervisor, testified that every driver received a copy of the PowerPoint presentation ever since he began giving the new driver orientation, from some time in 2003.
[5] The parties agree that the Department of Labor's conclusion is not binding in this litigation.
[6] Indeed, Cox represented that all of its California locations "operate in an integrated manner for purposes of driver assignments," and therefore argued that "in evaluating one facility, the [Department of Labor] must not disregard any contracts of the company that call for interstate transportation and interstate activities simply because, on one occasion, they were serviced by a different location. Drivers at any location could be called upon to haul any of the interstate shipments."
[7] Cox argued that many of its intra-California trips were, in fact, part of interstate commerce based on an interpretation of the intrastate warehouse rule when applied to petroleum products conveyed by interstate pipeline.
[8] Cox also argued that, since the Department of Labor had already determined that some of its drivers were exempt, common issues did not predominate. Cox reasoned that the drivers at the two terminals found to be exempt "would have greater difficulty disputing the applicability of the motor carrier exemption than drivers at other terminals."
[9] Plaintiffs also submitted evidence that some drivers were not paid for attending safety meetings and that one driver drove a truck from California to Arizona and was not paid for the return trip. Plaintiffs do not assert that these were common class-wide practices.
[10] As plaintiff Bell testified to receiving the additional half-hour pay, this fails to clarify the confusion.
[11] In their petition for review, plaintiffs argued only that "Cox ... had a policy of not paying drivers for time they spent waiting for their trucks to arrive at the terminal." It was only in their reply brief that they specifically challenged the policy whereby they would not be paid for waiting time only if they had failed to call in.
[12] The Driver Orientation Manual states that drivers "are permitted to take breaks (15 minutes) off the clock, using Qualcomm's start and end break message." The governing wage order provides for rest periods of ten minutes net rest time per four hours of work. "Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." (Cal.Code Regs., tit. 8, § 11090, subd. 12(A).) Plaintiffs make no argument that Cox's provision for unpaid rest periods violates the law.
[13] It was also Cox's policy that no pro rata payments for vacation pay would be made at the termination of employment. The trial court granted the plaintiffs' motion for class certification with respect to this claim. We therefore do not address it further.
[14] In connection with its supplemental brief, Cox had submitted a declaration of its counsel indicating that counsel had planned to file a supplemental brief on the definition suggested by plaintiffs' counsel at the hearing, but did not do so because plaintiffs' counsel changed the definition. Cox's counsel stated, "I do have issues with the class as defined at the hearing but those arguments are no longer relevant because the class definition has been changed."
[15] The court went on to say, "The court has made a statement of decision on the-record. I think it's adequate but I have asked counsel to go ahead and include other points that he sees fit. The court did consider all issues raised in these papers numerous times and each time the class definition changed, I had to consider them all again and the record will so reflect." In their reply brief in support of their writ petition, plaintiffs argue that the trial court's "instructions authorizing defense counsel to include `anything you see fit' in the class certification order shows deference to Defendant." Plaintiffs take the quote out of context and make an inference that does not follow. Plaintiffs were permitted to object to the order as proposed, before the trial court signed it.
[16] Our conclusion is the same if Cox is relying on the exemption based on the size and weight of its trucks. This, too, raises common questions.
[17] Cox took the position before the Department of Labor that any of its employees could be assigned any of its routes. Plaintiffs submitted evidence that they had been promised they would be assigned routes only in California, but did not suggest that their route assignments were otherwise limited.
[18] Alternatively, the claim of each driver at any terminal implicates all of Cox's routes from that terminal.
[19] Similarly, Cox's May 2005 memorandum by which employees were to acknowledge that they were part of a pool of interstate drivers, and its July 2005 attempt to make each driver do a run across state lines, raise common, not individual, issues.
[20] We do, however, sympathize with the trial court's frustration at the plaintiffs' six different attempts to define the class.
[21] To the extent that plaintiffs still argue that, without regard to the call-in policy, Cox failed to pay its drivers for waiting time, the trial court was correct in concluding plaintiffs failed to establish common issues predominate.
[22] The trial court denied class certification on the basis that there was no way to identify which of Cox's drivers had worked off-the-clock. If plaintiffs are permitted to challenge the call-in policy, it appears that the drivers entitled to recover (should the class prevail) would be all drivers who had ever waited for a truck after they had failed to call in. We note that, should the court certify the class of all of Cox's drivers, any drivers who had always called in, or never had to wait when they had not, could be easily excluded at the damages phase.
[23] To the extent plaintiffs now argue that Cox failed in its duty to keep accurate records of meal breaks, the argument was neither in Cox's complaint nor in its motion for class certification. As with plaintiff's challenge to Cox's call-in policy, it is left to the trial court's discretion on remand whether to allow plaintiffs to amend their complaint to challenge Cox's recordkeeping.
[24] We note that not all members of the proposed class would have overtime claims exceeding $10,000. Among the employees who submitted declarations in support of certification were Modesto Arciniega, who worked for Cox for only eight months and James Acosta, who worked for only two months.
[25] In their reply brief, plaintiffs argue that the fact the trial court allowed Cox to prepare the proposed order, which ultimately included findings on superiority, indicates the trial court showed unusual deference to Cox, necessitating remand to a different judge. As this issue was first raised in plaintiffs' reply brief, we need not address it. In any event, the trial court's direction for the prevailing party to prepare the proposed order was in no way improper.